UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS SAN ANGELO DIVISION

| | | |
|---|---|---|
| TORIBIO MUNGUIA and<br>KATHY MUNGUIA | § § § | |
| v. | § § § § § | Civil Action No. 6:09 CV-00023-C |
| AUTOZONE TEXAS, L.P.<br>AUTOZONE, INC., and<br>AUTOZONERS, LLC | § § § | |

# APPENDIX TO MOTION TO COMPEL ARBITRATION

## PART 1
## PAGES 1-19

# AZTEX ADVANTAGE:

# AUTOZONE TEXAS OCCUPATIONAL INJURY BENEFIT PLAN

## (Effective August 1, 2005)

## OFFICIAL PLAN DOCUMENT

©Copyright 2005 PartnerSource, Inc.
Rev. 6/21/05

# TABLE OF CONTENTS

Page

**ARTICLE I - DEFINITIONS** .................................................................................................. 1

| | | |
|---|---|---|
| 1.1 | Accident | 1 |
| 1.2 | Adverse Benefit Determination | 1 |
| 1.3 | Appeals Committee | 2 |
| 1.4 | Approved Facility | 2 |
| 1.5 | Approved Physician | 2 |
| 1.6 | AZTEX Advantage Acknowledge Form | 2 |
| 1.7 | Beneficiary | 2 |
| 1.8 | Claims Administrator | 3 |
| 1.9 | Company | 3 |
| 1.10 | Course and Scope of Employment | 3 |
| 1.11 | Covered Charge | 4 |
| 1.12 | Covered Employee | 10 |
| 1.13 | Cumulative Trauma | 10 |
| 1.14 | Custodial Care | 11 |
| 1.15 | Death Benefits | 11 |
| 1.16 | Determination | 11 |
| 1.17 | Disabled or Disability | 11 |
| 1.18 | Dismemberment Benefits | 11 |
| 1.19 | Emergency Care | 11 |
| 1.20 | Employee | 11 |
| 1.21 | Employer | 11 |
| 1.22 | First Aid | 12 |
| 1.23 | Gross Misconduct | 12 |
| 1.24 | Home Health Care | 12 |
| 1.25 | Home Health Care Agency | 12 |
| 1.26 | Injury | 12 |
| 1.27 | Maximum Benefit Limit | 17 |
| 1.28 | Medical Benefits | 17 |
| 1.29 | Medically Necessary | 17 |
| 1.30 | Medical Rehabilitation Hospital | 17 |
| 1.31 | Medicare | 18 |
| 1.32 | Modified Duty | 18 |
| 1.33 | Occupational Disease | 18 |
| 1.34 | Partial Disability | 18 |
| 1.35 | Participant | 19 |
| 1.36 | Plan | 19 |
| 1.37 | Plan Administrator | 19 |
| 1.38 | Plan Year | 19 |
| 1.39 | Post-Service Claim | 19 |
| 1.40 | Preexisting Condition | 19 |
| 1.41 | Pre-Injury Pay | 19 |
| 1.42 | Pre-Service Claim | 20 |

©Copyright 2005 PartnerSource, Inc.
Rev. 6/21/05

Page 3

|  |  | Page |
|---|---|---:|
| 1.43 | Relevant | 20 |
| 1.44 | Skilled Nursing Care | 20 |
| 1.45 | Skilled Nursing Facility | 20 |
| 1.46 | Total Disability and Totally Disabled | 21 |
| 1.47 | Traumatic Event | 21 |
| 1.48 | Urgent Care Claim | 21 |
| 1.49 | Usual and Customary | 22 |
| 1.50 | Wage Replacement Benefits | 22 |

**ARTICLE II – ELIGIBILITY, NATURE OF PAYMENTS AND ARBITRATION OF INJURY-RELATED DISPUTES ... 22**

| 2.1 | Eligibility | 22 |
|---|---|---|
| 2.2 | Nature of Payments | 23 |
| 2.3 | Arbitration of Certain Injury-Related Disputes | 23 |

**ARTICLE III - BENEFITS ... 26**

| 3.1 | Wage Replacement Benefits | 26 |
|---|---|---|
| 3.2 | Death Benefits | 28 |
| 3.3 | Dismemberment Benefits | 28 |
| 3.4 | Medical Benefits | 30 |

**ARTICLE IV - ADDITIONAL REQUIREMENTS AND LIMITATIONS ON BENEFITS ... 30**

| 4.1 | Reporting | 30 |
|---|---|---|
| 4.2 | Medical Management | 31 |
| 4.3 | Suspension Or Termination Of Benefits | 35 |
| 4.4 | Final Compromise And Settlement | 36 |

**ARTICLE V - ADMINISTRATION ... 37**

| 5.1 | Plan Administrator | 37 |
|---|---|---|
| 5.2 | Funding Policy And Method | 38 |

**ARTICLE VI – CLAIMS PROCEDURES ... 39**

| 6.1 | Filing A Claim For Benefits | 39 |
|---|---|---|
| 6.2 | Claims Review | 40 |

**ARTICLE VII – COORDINATION OF BENEFITS AND SUBROGATION ... 47**

| 7.1 | Reduction in Benefit Payments | 47 |
|---|---|---|
| 7.2 | Coordination of Benefits | 47 |

©Copyright 2005 PartnerSource, Inc.
Rev. 6/21/05

|   |   | Page |
|---|---|---|
| 7.3 | Recovery From Third Parties And Excess Payments | 49 |
| 7.4 | Notice Of Legal Proceedings | 49 |
| 7.5 | Assignment Of Rights | 50 |

**ARTICLE VIII - TERMINATION AND AMENDMENT** .......... 50

**ARTICLE IX - GENERAL PROVISIONS** .......... 50

| 9.1 | Inability to Make Payment | 50 |
|---|---|---|
| 9.2 | Claims Administrator and Appeals Committee Indemnity | 51 |
| 9.3 | Spendthrift Provision | 51 |
| 9.4 | Employment Noncontractual | 51 |
| 9.5 | Discharge for Benefit Payments | 51 |
| 9.6 | Participation By Affiliates | 51 |
| 9.7 | Plan Documents Control | 52 |
| 9.8 | Construction | 52 |
| 9.9 | Separability | 52 |
| 9.10 | Applicable Law | 52 |
| 9.11 | Health Insurance Portability and Accountability Act of 1996 | 52 |
| 9.12 | Consolidated Omnibus Budget Reconciliation Act of 1985 | 52 |
| 9.13 | Uniform Services Employment and Reemployment Rights Act | 52 |

**APPENDIX A: PARTICIPATING AFFILIATES**

**APPENDIX B: USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION**

**APPENDIX C: AZTEX ADVANTAGE ACKNOWLEDGE FORM**

©Copyright 2005 PartnerSource, Inc.
Rev. 6/21/05

page 5

# AZTEX ADVANTAGE:
# AUTOZONE TEXAS OCCUPATIONAL INJURY BENEFIT PLAN

This AZTEX Advantage: AutoZone Texas Occupational Injury Benefit Plan (the "Plan") is made and executed at Memphis, Tennessee, by AutoZoners, LLC, a Nevada corporation (the "Company").

### WITNESSETH THAT:

**WHEREAS**, the Company has rejected coverage for its Texas employees under the Texas Workers' Compensation Act, effective as of August 1, 2005; and

**WHEREAS**, the Company desires to establish an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), effective as of August 1, 2005, to provide a means by which the Company and other adopting employers can protect themselves from certain liabilities as nonsubscribers to the Texas workers' compensation insurance system by providing non-fringe disability, death, dismemberment and medical benefits with respect to any covered injury sustained by Texas employees in the course and scope of employment;

**NOW, THEREFORE**, in consideration of the premises, the Company hereby establishes this Plan to provide benefits and be administered in accordance with the following:

### ARTICLE I

### DEFINITIONS

1.1   "**Accident**" means an event which:

    (a)   was unforeseen, unplanned, and unexpected;

    (b)   occurred at a specifically identifiable time and place;

    (c)   occurred within the Course and Scope of Employment;

    (d)   occurred by chance or from unknown causes; and

    (e)   results in physical injury to the Participant.

1.2   "**Adverse Benefit Determination**" means a denial, reduction or termination of, or a failure to provide or make payment (in whole or in part) for, a Plan benefit. For example, this includes denial, reduction or termination of benefits based upon (a) a claimant's ineligibility to participate in the Plan, (b) application of any utilization review, (c) a medical service being experimental or investigational or not Medically Necessary or appropriate, (d) the Participant no longer being Totally Disabled or (e) treatment by an unauthorized physician.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

page 6

**1.3** "**Appeals Committee**" means the individual or individuals appointed by the Company to make Determinations on appeal of benefit claims and otherwise administer the Plan on behalf of the Company and all other Employers. The Claims Administrator cannot serve as the Appeals Committee or as a member of the Appeals Committee, and no individual who is a subordinate of the Claims Administrator can serve as the Appeals Committee or as a member of the Appeals Committee.

**1.4** "**Approved Facility**" means a hospital, other medical care facility or medical service or supply provider either expressly approved by the Claims Administrator, included on an approved list of facilities adopted by the Claims Administrator, or otherwise approved in writing by the Claims Administrator upon the request of a Participant. The Claims Administrator reserves the right to add to, delete from, or otherwise amend any list of Approved Facilities at any time.

**1.5** "**Approved Physician**" means a person duly licensed under applicable state law as a Medical Doctor or Doctor of Osteopathy and either expressly approved by the Claims Administrator, included on an approved list of physicians adopted by the Claims Administrator, or otherwise approved in writing by the Claims Administrator upon the request of a Participant. The Claims Administrator reserves the right to add to, delete from, or otherwise amend any list of Approved Physicians at any time.

**1.6** "**AZTEX Advantage Acknowledgement Form**" means the form attached hereto as Appendix C.

**1.7** "**Beneficiary**" means the person or persons determined in the following priority:

(a) If there is an Eligible Spouse, all Death Benefits shall be paid to the Eligible Spouse.

(b) If there is no Eligible Spouse, Death Benefits shall be paid in equal shares to the Eligible Children. If an Eligible Child has predeceased the Participant, Death Benefits that would have been paid to that child if he or she had survived the Participant shall be paid in equal shares per stirpes to the children of such deceased child.

(c) If the Participant is not survived by an Eligible Spouse or Eligible Child, any Death Benefits shall be paid to a surviving dependent (as determined in accordance with the support criteria set forth in section 152 of the Internal Revenue Code and such other rules as the Claims Administrator may prescribe) of the Participant who is a parent, sibling, or grandparent of the deceased Participant. If more than one of those dependents survives the Participant, any Death Benefits shall be divided among them in equal shares.

(d) If the Participant is not survived by an Eligible Spouse, Eligible Child, or dependent who is a parent, sibling, or grandparent, Death Benefits shall be payable to the Participant's estate.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

(e) For purposes of this Section:

(1) "Eligible Spouse" means the surviving spouse of the deceased Participant, recognized by a marriage certificate issued under the laws of the State of Texas or similar government authority, or by a Texas court decree of common law marriage (obtained at such person's sole initiative and expense).

(2) "Eligible Child" means a child of the deceased Participant, whether by blood, marriage, or legal adoption, if the child is or would have been at the time of the Participant's death:

(A) less than 19 years of age;

(B) between 19 and 25 years of age, enrolled as a full-time student in an accredited educational institution and supported primarily by Participant; or

(C) 19 or more years of age, primarily supported by Participant and incapable of self-sustaining employment by reason of mental or physical handicap.

**1.8** **"Claims Administrator"** means the individual or individuals or entity appointed by the Company to make initial Determinations of benefit claims under this Plan on behalf of the Company and all other Employers.

**1.9** **"Company"** means AutoZoners, LLC, a Nevada corporation whose principal place of business is located in Memphis, Tennessee, or any successor thereto.

**1.10** **"Course and Scope of Employment"** means an activity of any kind or character for which the Participant was hired and that has to do with, and originates in, the work, business, trade or profession of an Employer, and that is performed by a Participant in the furtherance of the affairs or business of an Employer. The term includes activities conducted on the premises of an Employer or at other locations designated by the Employer. This term does not include:

(a) a Participant's off-duty transportation or other off-duty activity;

(b) a Participant's transportation to and from his or her place of employment, unless:

(1) the transportation is furnished as part of the employment arrangement or is paid for by an Employer; provided, however that this does not include travel to his or her usual place of employment (A) in a vehicle owned by an Employer and controlled by the Participant; or (B) where payment by an Employer is pursuant to an expense allowance or reimbursement arrangement;

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

(2) the means of the transportation are under the control of an Employer; or

(3) the Participant is directed in his or her employment to proceed from one place to another place; provided, however, that travel away from the location where the Participant ceased furthering the Employer's business in a vehicle controlled by the Participant shall not be covered.

(c) travel by the Participant in furtherance of the affairs or business of an Employer if such travel is also in furtherance of personal or private affairs of the Participant, unless:

(1) the travel to the place where the Injury occurred would have been made even had there been no personal or private affairs of the Participant to be furthered by the travel; and

(2) the travel would not have been made had there been no affairs or business of the Employer to be furthered by the travel.

(d) any injury occurring in a parking lot, other common area adjacent to an Employer's property, or other location on the premises of an Employer, before the Participant clocks in or otherwise begins work for an Employer, or after the Participant clocks out or otherwise ceases work for an Employer.

(e) any injury occurring while the Participant is on a work break, unless (1) the injury occurs while the Participant is on a work break inside an Employer's facility, (2) such work break was authorized by his or her supervisor, (3) the Participant is scheduled to return to work that same day following such work break, (4) the Participant is not required to clock out for such work break under the Employer's timekeeping rules, and (5) the Participant has not clocked out for an Employer.

**1.11** "**Covered Charge**" means the cost to a Participant of a service or supply described in this Plan below, which service or supply is Medically Necessary, based on the nature of the Injury, as and when provided, and (1) cures or relieves the effects naturally resulting from the Injury; (2) promotes recovery; or (3) otherwise enhances the ability of the Participant to return to or retain employment. Such services and supplies are also subject to the medical management provisions of Section 4.2. For purposes of this Plan, the words "service" or "supply" include, but are not limited to, any related treatment, medication, technique or method.

(a) **First and Continuing Treatment.**

(1) The first Covered Charge must be incurred within 14 days following the date of the Injury; and

(2) No further amount shall be considered a Covered Charge if the Participant does not receive medical treatment from an Approved

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

Physician or Approved Facility (or scheduled treatment with an Approved Physician or Approved Facility has not been approved by the Claims Administrator) for a period of more than 60 days. Any charges incurred beyond this period of time must be associated with a new Injury. This subsection (2), however, shall not apply to any Covered Charge for testing and any follow up vaccination with respect to an Injury that involves a potential occupational exposure to a bloodborne pathogen.

(b)   **Approved Provider and Pre-Authorization Requirements.** The cost of a service or supply shall be a Covered Charge only if:

(1)   treatment is furnished by or under the direction of an Approved Physician or Approved Facility, acting within the scope of the Approved Physician's or Approved Facility's license, and pre-approved by the Claims Administrator (except when the Claims Administrator determines that prior approval was impossible under the circumstances). Such pre-approval may include authorization for multiple visits to an Approved Physician or Approved Facility, and must be in writing, or by electronic notice (except as otherwise specified below or in Article VI herein); or

(2)   (i)   treatment is provided as Emergency Care;

(ii)   an Approved Physician or Approved Facility is not available or is not within a reasonable distance from the location of the Participant at the time of Injury (taking into account available transportation and the nature of the Injury);

(iii)   the Claims Administrator receives notification of such Emergency Care within the later of 24 hours of the Participant's receipt of such care or the next business day; and

(iv)   after receiving primary Emergency Care, subsequent treatments are provided by, or at the direction of, an Approved Physician or Approved Facility in accordance with paragraph (1) above.

(c)   **Covered Medical That Can Be Verbally Authorized.** Subject to the restrictions and limitations set out elsewhere in this Plan, Covered Charges that can be verbally authorized shall include the cost of the following:

(1)   Approved Physician visits - at an Approved Facility (including charges for an emergency room), Approved Physician's office, or in the case of Home Health Care, at the Participant's home, including second opinion services requested by the Claims Administrator (in accordance with Section 4.2), and charges for a registered nurse;

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

5

    (2)  Medical supplies approved by the treating Approved Physician, including the following:

      (A)  Prescription drugs (generic, unless trade name drugs are requested by an Approved Physician) and over-the-counter drugs such as analgesics prescribed by an Approved Physician;

      (B)  Blood and other fluids (other than allergy, insulin, and similar drugs) injected into the circulatory system (but only to the extent not available through any refund or allowance by a blood bank or similar organization);

      (C)  Oxygen and its administration;

      (D)  Upon the written advice or prescription of an Approved Physician and only if obtained from an Approved Facility, rental or purchase of a wheelchair, assisted breathing apparatus, or other mechanical equipment necessary for the treatment of respiratory paralysis, and similar internal or external durable medical equipment designed primarily for therapeutic purposes;

      (E)  Surgical dressings, bandages, splints, casts, crutches, syringes, needles, trusses, and braces dispensed by an Approved Physician or Approved Facility; and

      (F)  Other medical supplies approved by the Claims Administrator;

    (3)  Ambulance services - professional ground ambulance service, or if no other means of transportation can reasonably suffice to deliver the individual to the closest appropriate Approved Facility, air ambulance, regularly scheduled railroad, or airlines;

    (4)  Eyeglasses or contact lenses - one pair per Injury up to $300, inclusive of professional office visit charges, but excluding routine eye examinations; and

    (5)  External hearing aid - up to $750, inclusive of professional office visit charges.

  (d)  **Medical Requiring Specific Approval in Writing or by Electronic Notice.**  Subject to the restrictions and limitations set out elsewhere in this Plan, Covered Charges <u>shall also include</u> the cost of the following <u>so long as the Claims Administrator specifically approves such charges in advance and in writing or by electronic notice</u>:

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

(1) Admission to an Approved Facility on an inpatient or outpatient basis, including semi-private room and board, ambulatory day surgery, anesthesia and its administration, and similar services;

(2) Diagnostic testing, including x-ray examinations laboratory tests, MRI, CAT Scan, nuclear medicine, radiology and pathology (including interpretive services) and similar testing;

(3) Speech, occupational and physical therapy provided by an Approved Physician or a licensed speech therapist, licensed occupational therapist or licensed physical therapist; provided, however, that such services shall be subject to case management approval regarding the number of visits, the types, and amount of services provided during such visits;

(4) Inpatient rehabilitation services provided in a Medical Rehabilitation Hospital; provided, however, that such services shall be subject to continued stay review by the Claims Administrator and case management approval regarding the types and amount of services provided;

(5) Surgery that restores a reasonable, normal pre-Injury functioning;

(6) Services of a dentist or licensed oral surgeon - services for treatment and repair of broken teeth, fractures and dislocations of the jaw, or the replacement of teeth (excluding temporomandibular junction dysfunction services) when the injured Participant seeks treatment as soon as possible after the Injury;

(7) Home Health Care (with respect to physical needs only) up to 75 visits per Plan Year and up to eight hours per visit for the first two weeks of Home Health Care and up to four hours per visit thereafter;

(8) Skilled Nursing Care, provided that an Approved Physician monitors the progress of the Participant at least once during each 30-day period of confinement;

(9) Orthotics, arch supports, corrective shoes, special bras or girdles, corrective appliances, prostheses, or any similar item;

(10) Organ and tissue transplant services not otherwise covered by some form of expense payment program, excluding the donor's transportation costs, organ procurement costs and the donor's surgical expenses;

(11) Charges for telephone consultations with the Participant, Participant's family, Approved Physicians or other health care providers;

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

(12) Mental health services (to the extent not otherwise covered by an Employer's Employee Assistance Program), but only when such services are provided for mental or emotional damage or harm resulting from a Participant being the victim of, or witness to, a Traumatic Event occurring during such Participant's Course and Scope of Employment; and provided, that such services shall not exceed five visits with an Approved Physician or Approved Facility. This coverage shall apply solely to Medical Benefits coverage and shall not result in any payment of Wage Replacement Benefits or other benefits under this Plan;

(13) Services rendered primarily for training, testing, evaluation, counseling, or educational purpose, including vocational rehabilitation;

(14) Reasonable travel, meal and lodging expenses related to medical treatment that requires travel greater than 75 miles from the Participant's residence (one way), in accordance with rules prescribed by the Texas Workers' Compensation Commission, as interpreted by the Claims Administrator for application under this Plan and approved by the attending Approved Physician.

(e) **Non-Covered Medical.** Any provision of this Plan to the contrary notwithstanding, Covered Charges <u>shall not include</u> the cost of the following:

(1) Charges incurred prior to the Participant's date of participation in the Plan, or prior to the Participant's date of Injury;

(2) Charges rendered after the Participant's Medical Benefits under the Plan terminate;

(3) Expenses which are not Medically Necessary, as determined by the Claims Administrator;

(4) Charges incurred more than 60 days after the date of the Participant's last Covered Charge (except as otherwise specified herein);

(5) Expenses that exceed any fee schedule adopted by the Claims Administrator or the Usual and Customary charge for the same or similar treatment, services or supplies in your geographic area;

(6) Services or supplies payable by any government or subdivision or agency thereof, or any other applicable third-party payor;

(7) Services or supplies which are experimental, investigative, or for the purposes of research, including, but not limited to, services and supplies that have not been approved by the American Medical Association, the Federal Drug Administration, the appropriate medical specialty society, or the appropriate governmental agency, all phases of

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

clinical trials, all treatment protocols based upon or similar to those used in clinical trials, or any treatment not generally accepted by the physician's profession in the United States as safe and effective for diagnosis and treatment;

      (8)    Services or supplies performed or provided while the Participant is not covered by the Plan;

      (9)    Services or supplies for which the Participant is not legally obligated to pay, or for which no charge would be made in the absence of the Plan;

      (10)    Services for the evaluation or treatment of mental or psychological damage or harm, except to the extent provided above under subsection (d);

      (11)    Services or supplies for personal comfort or convenience, such as a private room, television, telephone, radio, guest trays, and similar items;

      (12)    Fraudulent claims or claims not filed in good faith as determined by the Claims Administrator;

      (13)    Canceled appointment charges;

      (14)    Self-administered services;

      (15)    Services or supplies to which the Participant's condition is persistently nonresponsive;

      (16)    Services or supplies relating to Preexisting Conditions, except to the limited extent (if any) that an Approved Physician clearly confirms an identifiable and significant aggravation (incurred in the Course and Scope of Employment) of a Preexisting Condition; provided, however, that:

          (A)    coverage for such aggravation will be provided only if and to the extent that the Approved Physician -

              (i)    confirms that the Preexisting Condition has been previously repaired or rehabilitated, and

              (ii)    prescribes services or supplies that are Medically Necessary to treat such aggravation and likely to return the Participant to pre-Injury status; and

          (B)    no coverage will be provided if the Preexisting Condition was a major contributing cause of the Injury;

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

page 14

   (17) Acupuncture, behavior modification, pain management, hypnosis, biofeedback, or any service or supply ancillary to any of these treatments;

   (18) Chiropractic or spinal manipulation services;

   (19) Substance abuse services;

   (20) Custodial Care;

   (21) Charges for the purchase, rental or repair of bedding, or environmental control devices, including, but not limited to, an air conditioner, humidifier, dehumidifier, or air purifier; and charges for jacuzzis, saunas, vans, or structural changes to the Participant's residence or moving expenses;

   (22) Charges for services performed by:

    (A) a person who normally lives with the Participant;

    (B) the spouse of the Participant;

    (C) a parent of the Participant or of the Participant's spouse;

    (D) a child of the Participant or of the Participant's spouse; or

    (E) a brother or sister of the Participant or of the Participant's spouse; or

   (23) The cost of any other service or supply not specified in subsection (c) or (d) above.

 **1.12** "**Covered Employee**" means an Employee (i) whose employment with the Employer is principally located within the State of Texas or (ii) whose assigned distribution center is located in Terrell, Texas.

 **1.13** "**Cumulative Trauma**" means damage to the physical structure of the Participant's body occurring as a result of repetitious, physically traumatic activities that occur in the Course and Scope of Employment. Any provision of this Plan to the contrary notwithstanding, if an Employer has purchased an insurance policy described in Section 5.2, the purpose of which (in whole or in part) is to pay Plan benefits to Participants or indemnify the Employer for Plan benefits, then the Participant's last day of last exposure to the condition causing or aggravating such Cumulative Trauma must have taken place during the policy period. Any provision of this Plan to the contrary notwithstanding, no

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

benefits will be payable with respect to Cumulative Trauma unless the Participant has completed at least 180 days of continuous employment with an Employer.

1.14    "**Custodial Care**" means care consisting of services and supplies provided to an individual in or out of an institution primarily to assist him or her in daily living activities, whether or not he or she is disabled, and no matter by whom recommended or furnished.  Room and board and Skilled Nursing Care are not, however, considered Custodial Care if provided during confinement in an Approved Facility, and if combined with other necessary therapeutic services, under accepted medical standards, which can reasonably be expected to substantially improve the individual's medical condition which resulted from an Injury.

1.15    "**Death Benefits**" means any benefit payable under Section 3.2.

1.16    "**Determination**" means a decision of the Claims Administrator or Appeals Committee on whether benefits are payable to, or with respect to, a claimant under the Plan.

1.17    "**Disabled**" or "**Disability**" means a Total Disability or a Partial Disability.

1.18    "**Dismemberment Benefits**" means any benefit payable under Section 3.3.

1.19    "**Emergency Care**" means a service or supply provided with respect to a medical condition manifesting itself by a sudden and unexpected onset of acute symptoms of sufficient severity that in the absence of immediate medical attention could reasonably be expected to (i) result in death, disfigurement, or permanent disability, or (ii) result in substantial impairment of any bodily organ, part, or function. **This Emergency Care determination solely relates to satisfaction of the Plan's approved medical provider requirements, and the consideration of an exception for Emergency Care. Urgent Care Claims may not arise to the level of involving Emergency Care.  A Participant's decision to seek treatment from an urgent care clinic or hospital emergency room does not necessarily result in an Urgent Care Claim or involve Emergency Care. That determination shall be made within the sole administrative discretion of the Claims Administrator or Appeals Committee, with such advice and consultation from an Approved Physician as the Claims Administrator or Appeals Committee deems appropriate.**

1.20    "**Employee**" means any person who is employed in the regular business of, and receives his or her pay by means of a salary, wage or commission directly from, an Employer and for whom an Employer files a Form W-2 with the Internal Revenue Service. This term does not include an independent contractor or third-party agent.

1.21    "**Employer**" means the Company and any other related trade or business that adopts the Plan pursuant to Section 9.6.  Appendix A provides a list of such participating affiliates.

1.22    "**First Aid**" means on-site primary medical care rendered in accordance with Employer policy.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

page 16

1.23 "**Gross Misconduct**" means the Employee's gross misconduct within the meaning of Section 4980B of the Internal Revenue Code, or any successor provision of law.

1.24 "**Home Health Care**" means the following care provided to the Participant on the recommendation of an Approved Physician at the Participant's home or a Home Health Care Agency:

    (a)    intermittent nursing care by a(n):

        (1) Registered Nurse ("R.N.");
        (2) Licensed Practical Nurse ("L.P.N.");
        (3) Home Health Aide;
        (4) Occupational Therapist;
        (5) Physical Therapist or Licensed Physical Therapy Assistant;
        (6) Licensed Vocational Nurse ("L.V.N."); or
        (7) Licensed Speech Therapist; and

    (b)    private duty nursing services of a R.N., L.V.N., L.P.N., or Certified Home Health Aid:

provided, however, that Home Health Care services shall not include services provided by persons who ordinarily live in the same household as the Participant or who are related by blood, marriage, or legal adoption to the Participant or the Participant's spouse.

1.25 "**Home Health Care Agency**" means any of the following: (i) a home health care agency licensed by the State in which it is located, (ii) a home health agency as defined by the Social Security Administration, or (iii) an organization which is certified by the Participant's Approved Physician as an appropriate provider of Home Health Care and which: (x) has a full-time administrator, (y) keeps written medical records, and (z) has at least one R.N. on staff, or the services of an R.N. available.

1.26 "**Injury**" means damage or harm to the physical structure of the body caused solely as the result of either (i) an Accident, (ii) Cumulative Trauma, or (iii) an Occupational Disease. Such damage or harm must be incurred in, and directly and solely result from, the Course and Scope of Employment.

    (a) **Date of Injury.** Any provision of this Plan to the contrary notwithstanding, in order to be subject to this plan document, the date of such Injury must be on or after August 1, 2005. For all purposes of this Plan, the date of Injury shall be either (i) the date of the Accident resulting in the Injury, (ii) the date that the damage or harm, or symptoms thereof, were first known to (or should have been known to) the Participant or diagnosed by an Approved Physician as Cumulative Trauma, or (iii) the date that the damage or harm, or symptoms thereof, were first known to (or should have been known to) the Participant or diagnosed by an Approved Physician as an Occupational Disease. All Injuries sustained by a Participant that relate to (i) an Accident, or related series of Accidents, (ii) exposure

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

to an environmental or physical hazard that causes an Occupational Disease, or (iii) repetitious, physically traumatic activities that result in Cumulative Trauma shall be considered a single Injury for purposes of the Plan.

    (b) **Types of Non-Covered Injuries.** Any provision of this Plan to the contrary notwithstanding, the term Injury shall <u>not</u> include:

        (1) any strain, degeneration, damage or harm to, or disease or condition of, the eye or musculoskeletal structure or other body part resulting from use of a video display terminal or keyboard, poor or inappropriate posture, the natural results of aging, osteoarthritis, arthritis, or degenerative process (including, but not limited to, degenerative joint disease, degenerative disc disease, degenerative spondylosis/ spondylolisthesis and spinal stenosis), factors to which the general public is exposed, or other circumstances prescribed by the Claims Administrator which do not directly and solely result from the Participant's Course and Scope of Employment;

        (2) diagnostic labels which imply generalized musculoskeletal aches and pains in the absence of any demonstrable primary pathophysiology, such as Fibrositis, Fibromyalgia, Myofascial Pain Syndrome, Myositis, or Chronic Fatigue Syndrome;

        (3) except to the limited extent provided under the definition of "Covered Charges," any mental injury, emotional distress, mental trauma or similar injury to the mental or emotional state of a Participant, including without limitation, any physical manifestations resulting from such mental or emotional state, and any mental or emotional damage or harm that arises primarily from a personnel action, including, but not limited to, a transfer, promotion, demotion or termination of employment or other disciplinary action;

        (4) damage or harm resulting from airborne contaminants not commonly found in the Company's normal working environment, including, but not limited to, pollen, fungi, mold, and pollution;

        (5) damage or harm resulting from job stress;

        (6) any heart attack, stroke, or aneurysm (an "attack"), unless --

            (A) the attack can be identified as --

                (i) occurring at a definite time and place; and

                (ii) caused by a specific event related to and occurring in the Course and Scope of Employment;

            (B) the preponderance of the medical evidence regarding the attack indicates that the Participant's work rather than the natural

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

progression of a preexisting heart condition or disease was a substantial contributing factor of the attack; and

    (C)    the attack was not triggered solely by emotional or mental stress factors, unless it was precipitated by a sudden work-related stimulus;

(7)    hernia, unless such hernia is an inguinal hernia that --

    (A)    appeared suddenly and immediately following the Injury;

    (B)    did not exist in any degree prior to the Injury; and

    (C)    was accompanied by pain; or

(8)    any Preexisting Condition, except to the limited extent (if any) that an Approved Physician clearly confirms an identifiable and significant aggravation (incurred in the Course and Scope of Employment) of a Preexisting Condition; provided, however, that:

    (A)    coverage for such aggravation will be provided only if and to the extent that the Approved Physician -

        (i)    confirms that the Preexisting Condition has been previously repaired or rehabilitated, and

        (ii)    prescribes services or supplies that are Medically Necessary to treat such aggravation and likely to return the Participant to pre-Injury status; and

    (B)    no coverage will be provided if the Preexisting Condition was a major contributing cause of the Injury.

(c)    **Non-Covered Injury Circumstances.**  Furthermore, no benefits shall be payable under the Plan if:

(1)    the Injury occurred while the Participant was in a state of intoxication, or had otherwise lost the normal use of his or her mental or physical faculties as a result of the use of a drug or alcohol. Such intoxication or loss of faculties may be established on the basis of the facts and circumstances of the Injury, the testimony of witnesses, admissions or statements of the Participant, or on such other basis as the Claims Administrator may determine. For this purpose, the Participant shall be deemed to have been in a state of intoxication at the time of the Injury if the drug or alcohol test required by the Employer following the Injury finds a violation of the drug and alcohol policy applicable to the Participant ;

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

page 19