UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS SAN ANGELO DIVISION

| | | |
|---|---|---|
| TORIBIO MUNGUIA and | § | |
| KATHY MUNGUIA | § | |
| | § | |
| v. | § | Civil Action No. 6:09 CV-00023-C |
| | § | |
| | § | |
| | § | |
| AUTOZONE TEXAS, L.P. | § | |
| AUTOZONE, INC., and | § | |
| AUTOZONERS, LLC | § | |

# APPENDIX TO MOTION TO COMPEL ARBITRATION

## PART 3
## PAGES 41-60

page 41

provide the Company and its designated representatives with (or access to) drug and alcohol testing information related to an Injury;

(b) the Participant does not receive prior approval for all medical care other than Emergency Care;

(c) the Participant utilizes a non-approved physician or facility other than for Emergency Care;

(d) the Participant refuses to submit to examination by an Approved Physician selected by the Claims Administrator (other than the treating Approved Physician) as required by the Claims Administrator with respect to any surgical procedure or other diagnosis or treatment opinion rendered by the treating Approved Physician for which the Claims Administrator considers a second medical opinion advisable;

(e) the Participant is persistently nonresponsive to treatment, including, but not limited to, nonresponsiveness due to the need for Participant behavioral modification recommended by the treating Approved Physician;

(f) the Participant fails to provide accurate information to, or fails to follow the directions of, a treating Approved Physician. Following the directions of a treating Approved Physician includes, but is not limited to, any recommended treatment, therapy, course of action, abstinence, or rehabilitation program;

(g) the Participant fails or refuses to allow an authorized representative of an Employer to accompany the Participant to an appointment with a health care provider;

(h) the Participant fails to keep, or is late for, a scheduled appointment with a health care provider;

(i) the Participant engages in conduct following an Injury which is determined by the treating Approved Physician to be an injurious practice that is hindering the Participant's recovery from the Injury;

(j) the Participant fails or refuses to report in to the Participant's supervisor periodically, as directed, until able to return to work, including notice of expected recovery time after each appointment with the treating Approved Physician;

(k) the Participant fails to immediately inform the Participant's supervisor that he or she has been released by an Approved Physician to return to full or Modified Duty, or fails to timely report to work in accordance with such work release;

(l) the Participant fails to personally pick up his or her check for Wage Replacement Benefits provided under the Plan. This requirement may be waived by the Claims Administrator, in which case the benefit check shall be personally

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

delivered or mailed (in the discretion of the Claims Administrator) directly to the Participant;

(m) the Participant receives benefits with respect to the Injury from, or the incident creates any liability for an Employer under, any workers' compensation law, occupational disease law, unemployment compensation law, disability benefits law, or other similar law (whether or not any coverage for benefits is actually in force under such law);

(n) the Participant has been untruthful in regard to any aspect of the required information supplied as part of the injury reporting or employment process;

(o) the Participant is untruthful or otherwise fails to fully cooperate with the Claims Administrator (including, but not limited to, failure to comply with the provisions of Section 4.1(b)) or demonstrates bad faith in connection with the administration of the Plan, including, but not limited to, subrogation or coordination of benefits procedures; or

(p) the Participant fails or refuses to comply with any of the provisions of the Plan or the rules and procedures adopted by the Claims Administrator for the administration of the Plan.

**4.4     Final Compromise And Settlement.** At the Claims Administrator's option within 120 weeks after the date of Injury, and at any time thereafter if the Claims Administrator elects to extend such 120-week period after the date of Injury, the Claims Administrator may notify the Participant of the Plan's intention to be released from any further known and unknown benefit and all other injury-related claims by such Participant and pay a final claim settlement to, or with respect to, such Participant in exchange for the Participant's agreement to a release of liability in favor of the Plan, Employers, Claims Administrator, Appeals Committee, and other interested parties with respect to such claims. In that event, the Claims Administrator may appoint an actuary, appraiser, and/or Approved Physician to investigate, determine, and capitalize such claims, or use such other valuation method as the Claims Administrator may specify. The payment by the Plan and/or Employer of the value of such claims (as finally determined by the Claims Administrator) shall be made in such manner as the Claims Administrator may determine. No additional claims will be subsequently accepted with respect to such Injury. Any actuary or appraiser shall apply such rules, standards, and assumptions (present value discount, inflation, and mortality rates, etc.) as the Claims Administrator may determine. The Participant must cooperate and provide all information, sign such forms and agreements, and submit to all medical examinations as may be requested by the Claims Administrator to arrive at a valuation and settlement of the Participant's claims. No further benefits will be payable to, or with respect to, a Participant who fails or refuses to accept the Claims Administrator's claim valuation, sign the release agreement presented by the Claims Administrator, or otherwise comply with the requirements of this Section or other provisions of the Plan. Prior or subsequent to the Claims Administrator's evaluation and determination of the value of a Participant's claims, the Claims Administrator may determine to not capitalize and satisfy any such claim as described above and to instead continue eligibility for benefit payments and defer the above valuation and settlement.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

# ARTICLE V

# ADMINISTRATION

## 5.1 Plan Administrator.

    **(a) Administrator:** The Company shall be the Plan Administrator and named fiduciary of the Plan. The Plan shall be administered on behalf of the Company and all other Employers by the Claims Administrator and Appeals Committee. The Claims Administrator or Appeals Committee so appointed shall serve in such office until his or her death, resignation, or removal by the Company. The Company may change the Claims Administrator or Appeals Committee with or without cause at any time, and may modify the membership of the Claims Administrator or Appeals Committee positions at any time and from time to time. The Claims Administrator and Appeals Committee shall keep such records of their proceedings and acts as they deem to be necessary or appropriate for the purposes of the Plan. The Claims Administrator and Appeals Committee shall cause such information, documents or reports to be prepared, provided and/or filed as may be necessary to comply with the provisions of ERISA, or any other applicable law. The Appeals Committee shall receive no remuneration from the Plan for his or her services as the Appeals Committee. The Plan shall operate and keep its records on the basis of the Plan Year.

    **(b) Administrative Authority:** Subject to the Plan claims procedures, the Claims Administrator and Appeals Committee shall have discretionary and final authority to interpret and implement the provisions of the Plan, including, but not limited to, making all factual and legal determinations, correcting any defect, reconciling any inconsistency and supplying any omission, and making any and all determinations that may impact a claim for benefits hereunder. The Claims Administrator and Appeals Committee shall perform all of the duties and may exercise all of the powers and discretion that the Claims Administrator and Appeals Committee deem necessary or appropriate for the proper administration of the Plan, and shall do so in a uniform, nondiscriminatory manner. Any failure by the Claims Administrator or Appeals Committee to apply any provisions of this Plan to any particular situation shall not represent a waiver of the Claims Administrator's or Appeals Committee's authority to apply such provisions thereafter. Every interpretation, choice, determination or other exercise by the Claims Administrator or Appeals Committee of any power or discretion given either expressly or by implication to it shall be conclusive and binding upon all parties having or claiming to have an interest under the Plan or otherwise directly or indirectly affected by such action, without restriction, however, on the right of the Claims Administrator or Appeals Committee to reconsider and redetermine such action. There shall be no *de novo* review by any arbitrator or court of any decision rendered by the Appeals Committee and any review of such decision shall be limited to determining whether the decision was so arbitrary and capricious as to be an abuse of discretion. The Claims Administrator and/or Appeals Committee may adopt such rules and

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

procedures for the administration of the Plan as are consistent with the terms hereof.

**(c) Delegation of Responsibilities:** The Claims Administrator's and Appeals Committee's authority shall include, but not be limited to, the power to allocate or delegate fiduciary and non-fiduciary responsibilities or duties to Employees or third persons, including any insurer or contract administrator, and, except as is otherwise provided by applicable law, those persons to whom such responsibilities and duties have not been allocated or delegated shall not be liable for any act or omission of those persons to whom such responsibilities and duties have been allocated or delegated. Except as otherwise provided under ERISA, neither an Employer, the directors, officers, partners, managers, or supervisors of an Employer, the Plan Administrator, the Claims Administrator or the Appeals Committee nor any person designated to carry out fiduciary responsibilities pursuant to this Plan shall be liable for any act, or failure to act, which is made in good faith pursuant to the provisions of the Plan.

**5.2 Funding Policy And Method.** All benefits payable to or with respect to a Participant under this Plan shall be paid or provided for by the Employer who was the employer of such Participant at the time of his or her Injury. Unless provided by a trust established pursuant to the Plan, said benefits shall be paid by such Employer at the direction of the Claims Administrator or Appeals Committee or its designated representative solely out of the general assets of such Employer. The Employers shall have no obligation to establish any fund or trust for the payment of benefits under this Plan. An Employer shall have no obligation, but shall have the right, to obtain insurance contracts with one or more insurers to provide funds to the Employer that can be used, if the Employer so desires in its sole discretion, to pay all or any portion of a benefit payable under this Plan but no benefits under the Plan are guaranteed under any contract or policy of insurance and the Employer of the Participant shall be solely responsible for the payment of claims hereunder. Any such funds shall not be considered "plan assets" for purposes of ERISA and shall constitute a part of the general assets of the Employer. Any such insurance contract shall be owned by, and (unless contrary to legal requirements adhered to by the insurer) all amounts shall be payable thereunder to, the Employer that applied for the contract, and no Participant shall have any interest in, or right to, any amounts payable under the contract. As a condition to the receipt of benefits under this Plan, and unless otherwise prohibited by law, the Claims Administrator may require a Participant to sign a form prescribed by the Claims Administrator which will serve to assign all or a portion of any benefits payable under such an insurance contract to the Employer that applied for the contract. If, notwithstanding the provisions of this Section 5.2, any insurance benefits are paid directly by an insurance company to a Participant or Beneficiary with respect to an Injury covered under this Plan, such payments shall be deemed to be made under this Plan by an Employer or shall otherwise be subject to the coordination of benefits provisions of Section 7.2, as determined by the Claims Administrator.

## ARTICLE VI

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

## **CLAIMS PROCEDURES**

**6.1   Filing a Claim for Benefits.**  A claim for Medical Benefits, Wage Replacement Benefits, or Dismemberment Benefits under the Plan shall be initiated by a Participant by (i) complying with the notice requirements of Section 4.1, and (ii) submitting to medical treatment in accordance with Section 4.2. A claim for Medical Benefits can also be directly submitted on the behalf of a Participant to the Claims Administrator by a health care professional.  A claim for Death Benefits under the Plan shall be initiated by a Beneficiary providing notice of entitlement thereto to the Claims Administrator within 90 days after the date of the Participant's death.

(a)   **What is a Claim** -- Each (i) medical service or supply for which payment is requested, (ii) Wage Replacement Benefit for a particular payroll period, or (iii) claim for Death Benefits or Dismemberment Benefits, shall be deemed a separate "claim" for benefits that is subject to a Determination under the Plan. The Plan's payment of a particular claim (for example, payment for an initial medical evaluation, even on a claim that may have been reported late) does not waive or otherwise prejudice the Claims Administrator's or Appeals Committee's right to deny another particular claim or all future claims for benefits under the Plan. As stated above, any failure by the Claims Administrator or Appeals Committee to apply any provisions of this Plan to any particular situation shall not represent a waiver of the Claims Administrator's or Appeals Committee's authority to apply such provisions thereafter.

(b)   **Who is a Claimant** -- A claimant or a claimant's authorized representative may file a claim for benefits under the Plan, as well as an appeal of an Adverse Benefit Determination. References in this ARTICLE to "claimant" shall include a Participant, a medical provider seeking payment for a service or supply, a Beneficiary, or a claimant's authorized representative, as applicable. The Plan shall have the right to establish reasonable procedures for determining whether and to what extent an individual has been authorized to act on behalf of a claimant. However, with respect to an Urgent Care Claim, a physician or other health care provider licensed, accredited and certified to perform specified health services consistent with state law and with knowledge of a claimant's medical condition shall be permitted to act as the authorized representative of the claimant.

(c)   **Information to Submit** -- Claims must include the information required by Section 4.1(b) and such other reasonable information requested by the Claims Administrator, such as medical records or a written statement from an independent service provider evidencing the date, type of services rendered, and the total cost of such services.  In addition, the Claims Administrator may require the claimant to provide a written and signed statement which provides that the Covered Charge has not been reimbursed, or is not reimbursable under any other plan or program. Further, the Claims Administrator may also request that the claimant file all appropriate claims and requests for payment from any other plan or program maintained by the claimant prior to making any payments under this Plan. See ARTICLE VII on "Coordination of Benefits and Subrogation". The

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

page 46

Claims Administrator may rely upon all such information furnished by the claimant, including the claimant's current mailing address, and shall have no obligation or duty to locate a claimant.

(d) **Submission of Medical Bills for Payment** -- Approved Physicians and Approved Facilities will be requested to invoice all health care-related charges directly to the Claims Administrator (or an Employer, which shall immediately transmit such invoice to the Claims Administrator). However, in the event that a Participant receives such an invoice or pays such a charge, all requests for payment or reimbursement of Covered Charges must be filed with the Claims Administrator within 30 days from the date such expenses are incurred or, if later, the date such Participant receives an invoice from an Approved Physician, Approved Facility, or other health care provider (in the case of Emergency Care) for such expenses.

(e) **Incomplete Claim Submissions** -- In the event that a claim, as originally submitted, is not complete, the Claims Administrator shall notify the claimant in the manner described below, and the claimant shall have the responsibility for providing the missing information. Notwithstanding the foregoing, the period of time within which a benefit Determination must be made shall begin at the time that a claim is filed in accordance with this Plan, without regard to whether all the information necessary to make a benefit Determination accompanies the claimant's filing. Subject to the applicable provisions of this Article VI, in the event that the period of time for a particular claim is extended due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination shall be suspended from the date on which the notification of the extension is sent to the claimant until the date on which the Claims Administrator receives the claimant's response to the request for additional information.

### 6.2 Claims Review.

(a) **Notice of Initial Benefit Determination** - The Claims Administrator shall provide notice to the claimant of its initial benefit Determination as follows:

(1) **Urgent Care, Pre-Service Medical Claims** -- In the case of a Pre-Service Claim for Medical Benefits that is an Urgent Care Claim, the Claims Administrator shall notify the claimant of the Plan's initial benefit Determination (whether adverse or not) as soon as possible, taking into account the medical exigencies of the particular claim, but not later than 72 hours after receipt of the claim. A Determination that such claim will be covered can be communicated to the claimant verbally, in writing, or by electronic notice; but an Adverse Benefit Determination must be provided in writing or by electronic notice as described further below. If the claimant (i) fails to follow the Plan's procedures for filing an Urgent Care Claim, or (ii) otherwise fails to provide sufficient information to determine whether, or to what extent, benefits are covered or payable under the Plan on an Urgent Care Claim, then:

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

(A) The Claims Administrator shall notify the claimant as soon as possible, but not later than 24 hours after its receipt of the claim, of the procedure to follow or the specific information necessary to complete the claim. Notification may be oral, unless the claimant requests a written notice. This notice requirement shall only apply to the extent that such failure is a communication by a claimant that is received by the Claims Administrator, and the communication names a specific claimant, a specific medical condition or symptom, and a specific treatment, service or product for which approval is requested.

(B) The claimant shall then be given a reasonable amount of time, taking into account the circumstances, but not less than 48 hours, to correct such failure.

(C) The Claims Administrator shall then notify the claimant of the Plan's initial benefit Determination as soon as possible, but not later than 48 hours after the earlier of (i) the Claims Administrator's receipt of the specified information necessary to complete the claim, or (ii) the end of the time period given the claimant to provide such information.

(2) **Concurrent Medical Care Decisions** – If the Claims Administrator has approved an ongoing course of medical treatment to be provided over a period of time or number of treatments:

(A) The Claims Administrator shall notify the claimant of any reduction or termination by the Plan of such course of treatment. Such reduction or termination shall be considered an Adverse Benefit Determination and the Claims Administrator shall notify the claimant sufficiently in advance of the reduction or termination to allow the claimant to appeal and obtain a benefit Determination on review before the course of treatment is actually reduced or terminated.

(B) Any request by a claimant to extend the course of treatment beyond the prescribed period of time or number of treatments previously approved by the Plan that is an Urgent Care Claim shall be decided as soon as possible, taking into account the medical exigencies of the claim. The Claims Administrator shall make an initial benefit Determination, whether adverse or not, within 24 hours after its receipt of the claim, provided that any such claim is made to the Plan at least 24 hours prior to the expiration of the prescribed period of time or number of treatments. If such claim is not made to the Plan within such 24-hour period, the request shall be treated as an Urgent Care Claim and be decided within the normal Urgent Care Claim timeframes (i.e., as soon as

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

possible, taking into account the medical exigencies of the claim, but not later than 72 hours after receipt).

(C)   Any request by a claimant to extend the course of treatment beyond the prescribed period of time or number of treatments previously approved by the Plan that is not an Urgent Care Claim shall be treated as a new benefit claim and decided within the timeframe appropriate to the type of claim (i.e., as a Pre-Service Claim or a Post-Service Claim).

Notification of any Adverse Benefit Determination concerning a request to extend the course of treatment, whether involving an Urgent Care Claim or not, shall be made in accordance with the provisions of this Section.

(3)   **Non-Urgent Care, Pre-Service Medical Claims** – In the case of a Pre-Service Claim for Medical Benefits that is not an Urgent Care Claim, the Claims Administrator shall notify the claimant of the Plan's initial benefit Determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances, but not later than 15 days after its receipt of the claim. A Determination that such claim will be covered can be communicated to the claimant verbally, in writing, or by electronic notice; but an Adverse Benefit Determination must be provided in writing or by electronic notice as described further below.

(A)   If the claimant fails to follow the Plan's procedures for filing a non-urgent care, Pre-Service Claim, then the Claims Administrator shall notify the claimant as soon as possible, but not later than 5 days after its receipt of the claim, of the procedures to follow. Notification may be oral, unless the claimant requests a written notice. This notice requirement shall only apply to the extent that such failure is a communication by a claimant that is received by the Claims Administrator, and the communication names a specific claimant, a specific medical condition or symptom, and a specific treatment, service or product for which approval is requested.

(B)   The Claims Administrator may extend the 15-day benefit Determination period up to an additional 15 days if it determines that, due to matters beyond the control of the Plan, an initial benefit Determination cannot be made within the first 15-day period, and notifies the claimant of the special circumstances requiring the extension and the date by which the Plan expects to render a decision. If the extension is necessary due to a failure of the claimant to submit the information necessary to decide the claim, the extension notice shall specifically describe the required information and the claimant shall then be given at least 45 days to provide the specified information. However, the Claims Administrator's timeframe for making a benefit Determination shall

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

be suspended until the date upon which the claimant responds to the request for additional information.

(4) **Post-Service Medical Benefit, Wage Replacement Benefit, Death Benefit, and Dismemberment Benefit Claims** – In the case of a Post-Service Claim for Medical Benefits or a claim for Wage Replacement Benefits, Death Benefits or Dismemberment Benefits, the Claims Administrator shall notify the claimant of an Adverse Benefit Determination within 30 days after its receipt of the claim. The Claims Administrator may extend this period up to an additional 15 days if the Claims Administrator determines that an extension is necessary due to matters beyond the control of the Plan. Notice of such extension must be provided to the claimant prior to the expiration of the initial 30-day period and state (i) the special circumstances requiring the extension, and (ii) the date by which the Plan expects to render a decision. If the extension relates to a claim for Wage Replacement Benefits, such notice shall also state (i) the standards on which entitlement to benefits is based, and (ii) unresolved issues that prevent a benefit determination on the claim and what additional information is needed to resolve those issues. If additional information is requested with the extension notice, the claimant shall have 45 days from the date of the notice of extension in order to provide the specified information. However, the Claims Administrator's timeframe for making a benefit Determination shall be suspended until the date upon which the claimant responds to the request for additional information.

(b) **Manner and Content of Adverse Benefit Determinations** – If the initial benefit Determination is an Adverse Benefit Determination, the Claims Administrator shall provide a written or electronic notice to the claimant that satisfies the following requirements:

(1) Any electronic notice shall satisfy ERISA regulations that specify the standards for electronic disclosure of benefit plan information;

(2) The notice shall be written in a manner calculated to be understood by the claimant;

(3) The notice shall set forth the specific reason or reasons for the Adverse Benefit Determination, making reference to the specific Plan provisions on which the Adverse Benefit Determination is based;

(4) If an internal rule, guideline, protocol or other similar criterion was relied upon in making an Adverse Benefit Determination on a claim for Medical Benefits or Wage Replacement Benefits, the notice shall state that such rule, guideline, protocol or other similar criterion was relied upon in making the Adverse Benefit Determination and that a copy thereof shall be provided free of charge to the claimant upon request;

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

(5) If the Adverse Benefit Determination of a Medical or Wage Replacement Benefits claim is based upon medical necessity, an experimental treatment or similar exclusion or limit, the notice shall provide either an explanation of the scientific or clinical judgment for the Adverse Benefit Determination, applying the terms of the Plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request;

(6) The notice shall include a statement that in the case of an Adverse Benefit Determination on review by the Appeals Committee, the Plan offers no further voluntary levels of appeal and that the claimant can pursue his or her right to bring an action under ERISA section 502(a);

(7) If the initial Adverse Benefit Determination involves an Urgent Care Claim, the notice shall provide a description of the expedited review process applicable to such claims. Notification of an Adverse Benefit Determination that involves an Urgent Care Claim may be provided to the claimant orally within the time frames specified above, provided that the oral notification satisfies the requirements of this subsection and that a written or electronic notice satisfying the requirements of this subsection is furnished to the claimant not later than 3 days after the oral notification;

(8) The notice shall describe any additional materials or information necessary for the claimant to perfect the claim and explain why such material or information is necessary; and

(9) The notice shall provide a description of the Plan's review procedures (including the time limits applicable to these review procedures).

(c) **Appeal of Adverse Benefit Determinations** -- The claimant may appeal in writing an initial Adverse Benefit Determination to the Appeals Committee within the following number of days following his or her receipt of the Adverse Benefit Determination from the Claims Administrator:

(1) 180 days for a Medical Benefits or Wage Replacement Benefits claim; or

(2) 60 days for a Death Benefit or Dismemberment Benefit claim.

If the Adverse Benefit Determination involves an Urgent Care Claim for Medical Benefits, the claimant may request orally or in writing for an expedited review of the Adverse Benefit Determination and all necessary information, including the Plan's benefit Determination on review, shall be transmitted between the Plan and the claimant by telephone, facsimile or other available expeditious method.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

page 51

(d) **Appeals Committee Consideration** -- When reviewing the appeal of an Adverse Benefit Determination, the Appeals Committee shall comply with the following requirements:

(1) The claimant may submit written comments, documents, records, and other information relating to the claim for benefits, and the Appeals Committee shall take all of such information into account when reviewing such claim, without regard to whether such information was submitted or considered in the initial benefit Determination;

(2) The claimant may receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information that is Relevant to the claimant's claim for benefits (as determined by the Appeals Committee);

(3) The Appeals Committee review of an Adverse Benefit Determination on a claim for Medical Benefits or Wage Replacement Benefits shall not give any deference to the initial Adverse Benefit Determination.

(4) If the appeal request on a Medical Benefits or Wage Replacement Benefits claim is based in whole or in part on a medical judgment, including Determinations with regard to whether a particular treatment, drug or other item is experimental, investigational or not medically necessary or appropriate, the Appeals Committee shall consult with an Approved Physician who has appropriate training and experience in the field of medicine involved in the medical judgment. This Approved Physician shall not be an individual who was consulted in connection with the initial Adverse Benefit Determination or a subordinate of such individual.

(5) Upon request of a claimant, the Appeals Committee shall identify the individual names of any medical or vocational experts whose advice was obtained in connection with an initial Adverse Benefit Determination, without regard to whether the advice of such experts was relied upon in making the benefit Determination.

(e) **Timing of Notice of Benefit Determination on Review** -- The Appeals Committee shall provide notice to the claimant, as described in subsection (f) below, of the Plan's benefit Determination on review in accordance with the following timeframes:

(1) **Urgent Care, Pre-Service Medical Claims** -- In the case of a Pre-Service Claim for Medical Benefits that is an Urgent Care Claim, the Appeals Committee shall notify the claimant of the Plan's benefit Determination on review as soon as possible, taking into account the medical exigencies of the claim, but not later than 72 hours after its receipt of the claimant's appeal request. No extension of time is available for

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

Appeals Committee Determinations on the review of claims for Medical Benefits.

(2) **Non-Urgent Care, Pre-Service Medical Claims** – In the case of a Pre-Service Claim for Medical Benefits that is not an Urgent Care Claim, the Appeals Committee shall notify the claimant of the Plan's benefit Determination on review within a reasonable period of time appropriate to the medical circumstances, but not later than 30 days after its receipt of the appeal request. No extension of time is available for Appeals Committee Determinations on the review of claims for Medical Benefits.

(3) **Post-Service Medical Benefit, Wage Replacement Benefit, Death Benefit, and Dismemberment Benefit Claims** – In the case of a Post-Service Claim for Medical Benefits or a claim for Wage Replacement Benefits, Death Benefits or Dismemberment Benefits, the Appeals Committee shall notify the claimant of the Plan's benefit Determination on review within 45 days after its receipt of the appeal request. The Appeals Committee may extend this period up to an additional 45 days on a claim for Wage Replacement Benefits, Death Benefits, or Dismemberment Benefits if the Appeals Committee determines that an extension is necessary due to matters beyond the control of the Plan. Written or electronic notification of an extension must be provided to the claimant prior to the expiration of the initial 45-day period and indicate the special circumstances requiring the extension and the date by which the Plan expects to render a decision.

(f) **Manner and Content of Benefit Determination on Review** – The Appeals Committee shall provide a claimant with written or electronic notification of the Plan's benefit Determination on review. If the decision on review is an Adverse Benefit Determination, the notice must satisfy all the requirements set forth in subsection (b)(1) through (6) above, and also state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information Relevant to the claimant's claim for Plan benefits.

(g) **Extension of Time Frames Allowed by Law or Agreement** – In the event that ERISA rules and regulations permit additional time for decisions or actions by the Claims Administrator or Appeals Committee, the Claims Administrator or Appeals Committee may exercise their discretion to utilize (but not exceed) those extended time frames; provided, however, that this discretion shall only be exercised when necessary to provide a full and fair review of a claimant's right to benefits in accordance with the terms of this Plan (e.g., additional time needed to obtain an appointment and results of a medical examination). Upon request by the Plan, a claimant may also voluntarily agree to an extension or further extension of any time period within which the Plan must decide a claim.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

page 53

(h)  **Exhaustion of Administrative Remedies:**  No legal action can be brought by or with respect to a Participant to recover benefits under the Plan before the foregoing claims procedure has been exhausted.  For all ERISA claims or actions (including claims for violations of ERISA-protected rights), the claim or action must be brought within two years of the date when the claimant knows or should know of the actions or events that gave rise to such claimant's claim.

## ARTICLE VII

## COORDINATION OF BENEFITS AND SUBROGATION

**7.1  Reduction in Benefit Payments.**  Benefit payments under this Plan shall be reduced by the amount of any applicable federal or state income, employment, or other taxes that are required by law to be withheld.  Wage Replacement Benefit payments under this Plan shall also be reduced by the Participant's earnings from any employer after Disability begins, amounts legally garnished, and Participant contributions (through salary reduction or otherwise) to a 401(k) or a 403(b) plan, cafeteria plan, or other pre-tax salary deferral employee benefit plan.

**7.2  Coordination Of Benefits.**  To the extent provided by the coordination of benefits provision specified below, the Wage Replacement Benefits and Medical Benefits payable under the Plan shall be reduced by any amount paid or available with respect to the Participant's Injury under the Social Security Act (except as specified under 7.2(b)), the Railroad Retirement Act, any workers' compensation, unemployment compensation, occupational disease, or other law, or any other benefit plans, including, but not limited to, a policy or policies of automobile (including, but not limited to medical payment coverage, personal injury protection coverage, uninsured motorists coverage and under-insured motorist coverage), disability, or health insurance purchased by the Participant or an Employer; provided, however, the fact that a Participant is eligible for or is provided medical assistance under a state plan will not be taken into account in making payment under this Plan.

(a)  If a Participant is covered under one or more such benefit plans, then (unless otherwise subject to Section 7.3) the benefits payable under this Plan will be either regular benefits or reduced benefits that, when added to the benefits of the other plan(s), will not exceed 100% of the amount described herein.  The purpose of this provision is to prevent duplicate payments under plans that would exceed 100% of the benefits described in this Plan.  In the coordination of benefits, one of the plans will be designated as the primary plan and the other plans will be designated as secondary.  The primary plan will pay its full benefits first, then the secondary plan(s) will pay, but payments will be coordinated so that the total from all plans will not be more than the benefits described in this Plan.  If a person is covered by more than one plan to which this coordination of benefits provision applies, then (subject to subsection (b) below) the following rules will determine which plan will be primary:

(1)  When only one of the plans has a coordination of benefits provision, then the plan without such a provision will be the primary plan;



(2) If both plans have such a provision, then the plan under which the person is not covered as an employee will be the primary plan;

(3) The provisions of subsection (2) above to the contrary notwithstanding, if both plans have such a coordination of benefits provision and the person is covered as an active employee under one of the plans and a former employee under the other plan, then the plan under which the person is covered as a former employee will be the primary plan;

(4) If the above rules do not establish an order of benefit determination, and one of the plans is insured and the other plan is self-funded by an Employer (as described in Section 5.2), then the insured plan will be the primary plan; and

(5) If none of these rules establish an order of benefit determination, then the plan that has covered the Participant for the longer period of time will be the primary plan.

(b) Any provision herein to the contrary notwithstanding, Medical Benefits payable under this Plan to or with respect to any Participant who is in "current employment status" as defined for purposes of Medicare, and who is eligible for benefits under Medicare, shall be primary and shall not be reduced by the amount of benefits payable to or with respect to such Participant under Medicare, which will be considered the secondary plan. However, Medical Benefits payable under this Plan to or with respect to any Participant who is not in "current employment status," as defined for purposes of Medicare, and who is eligible for benefits under Medicare, shall be secondary and reduced by the amount of all benefits payable to or with respect to such Participant under Medicare, which will be the primary plan.

(c) The Participant must cooperate with the Employer in furnishing to such Employer copies of other policies, coverages or plans which may be applicable to the Injury and in completing and returning to such Employer any questionnaire or forms inquiring about, or assigning rights to recover under, other policies, coverages or plans which may cover or be applicable to such Participant.

7.3 **Recovery From Third Parties And Excess Payments.** If a Participant or Beneficiary becomes entitled to or receives Plan benefits for any Injury caused by the negligence or other act or omission of any person or organization (including, but not limited to, an Employer), and is (or later becomes) entitled to or otherwise collects any damages or other compensation in connection with such Injury, whether by insurance, litigation, settlement or other proceeding, the Participant or Beneficiary shall (i) subrogate his or her right to and reimburse the Plan out of said damages or other compensation to the extent of the Plan benefits paid to, or with respect to, the Participant or Beneficiary, (ii) subrogate his or her right to and reimburse the Plan out of said damages or other compensation for all medical management, investigation, attorney's fees and other expenses related to the Participant's or Beneficiary's claim for benefits (including any subrogation proceeding), and (iii) execute any assignment, lien form or other document requested by the Claims

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

page 55

Administrator to enable the Plan to recover such Plan benefits and expenses. If (i) a Participant or Beneficiary fails, refuses or neglects to reimburse the Plan or otherwise comply with the provisions of this Section, or (ii) payments are made under the Plan based on fraudulent information or otherwise in excess of the amount necessary to satisfy the provisions of the Plan, then, the Plan shall have all remedies and rights of recovery specified above. The Plan shall also have the right to terminate or suspend benefit payments and/or recover the reimbursement due to the Plan by withholding, offsetting and recovering such amount out of any future Plan benefits or amounts otherwise due from the Plan to or with respect to such Participant or Beneficiary. The Plan shall also have the right to bring a lawsuit and assert a constructive trust against any and all persons that have assets that the Plan can claim rights to. The Plan has the right of first recovery from any judgment, settlement or other payment, regardless of whether the Participant has been "made whole." The Plan's subrogation rights will not be reduced by attorneys' fees or expenses incurred in pursuing recovery against a third party and the "common fund" doctrine shall not apply. Any attorneys' fees and/or expenses incurred by or at the request of the Participant, Beneficiary or his or her attorney in a third party action shall be the sole responsibility of the Participant or Beneficiary.

**7.4** **Notice Of Legal Proceedings.** A Participant or Beneficiary shall provide the Claims Administrator with prior written notice of the involvement of such Participant or Beneficiary in any lawsuit, settlement discussion or other proceeding, one of the principal purposes of which is recovering, from any person or organization, damages or other compensation in any way related to any Injury for which such Participant, Beneficiary or a medical provider has received (or may in the future file a claim to receive) Plan benefits. The Plan shall have the right to intervene for itself and on behalf of a Participant or Beneficiary in any such lawsuit, settlement discussion or other proceeding. If a Participant or Beneficiary neglects, fails or refuses to seek a recovery from any person or organization for any Injury caused by the negligence or other act or omission of such person or organization for which such Participant, Beneficiary or a medical provider has received Plan benefits, the Plan shall have the right to institute a lawsuit or other proceeding or do any other act that in the opinion of the Claims Administrator may be necessary or desirable to recover the Plan benefits paid (and to be paid in the future) to the Participant, Beneficiary or a medical provider, plus any costs and expenses incurred by the Plan in pursuing such recovery.

**7.5** **Assignment Of Rights.** Upon the request of the Claims Administrator, a Participant or Beneficiary shall assign to the Plan the right to intervene in or institute any lawsuit, settlement discussion, or other proceeding described in Section 7.4, and to use the name of the Participant or Beneficiary for such purpose. The Plan shall have the right to select legal counsel of its own choice and such counsel shall have complete control over the conduct of any such lawsuit, settlement discussion, or other proceeding. Whenever the Plan shall intervene in or institute any lawsuit or other proceeding as permitted by the provisions of this Section, the Plan may pursue same to a final determination and the Plan expressly reserves the right to appeal from any adverse judgment or decision. The Participant or Beneficiary shall give the Plan all reasonable aid in any such lawsuit, settlement discussion, or other proceeding in effecting settlement, in securing evidence, in obtaining witnesses, or as may otherwise be requested by the Claims Administrator. The Participant or Beneficiary shall release the Plan, the Employers, the Plan Administrator, the

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

Claims Administrator, the Appeals Committee, and their respective directors, officers, agents, attorneys, and employees from all claims, causes of action, damages and liabilities of whatever kind or character that may directly or indirectly arise out of the pursuit or handling by the Plan of any such lawsuit, settlement discussion or other proceeding.

## ARTICLE VIII

## TERMINATION AND AMENDMENT

The Company shall have the right and power at any time and from time to time to amend this Plan, in whole or in part, on behalf of all Employers, and at any time to terminate this Plan or any Employer's participation hereunder; provided, however, that no such amendment or termination shall alter the arbitration provisions of Section 2.3 with respect to, or reduce the amount of any benefit payable to or with respect to a Participant under the Plan in connection with, an Injury occurring prior to the date of such amendment or termination. In addition, any such amendment or termination of the arbitration provisions of Section 2.3 shall not be effective until at least 14 days after written notice has been provided to Plan Participants. Any such amendment or termination shall be pursuant to formal written action of a representative authorized to act on behalf of the Company.

## ARTICLE IX

## GENERAL PROVISIONS

**9.1** **Inability to Make Payment.** In the event an individual becomes entitled to a payment under this Plan and such payment cannot be made (i) because the address provided by the individual is incorrect, (ii) because the individual fails to respond to a notice sent to the address provided by the individual, (iii) because of conflicting claims to such payment, or (iv) because of any other reason, the amount of such payment, if and when made, shall be the amount determined under the provisions of ARTICLE III without interest thereon. If, within two years after any amount becomes payable hereunder to an individual, the same shall not have been claimed, provided the Claims Administrator has exercised reasonable diligence in attempting to make such payment, the amount thereof shall be forfeited and shall cease to be a liability of this Plan.

**9.2** **Claims Administrator and Appeals Committee Indemnity.** The Employers shall indemnify and hold harmless any Employee designated as the Claims Administrator or a member of the Appeals Committee, and any other Employee of an Employer to whom the Claims Administrator or Appeals Committee has delegated administrative authority with respect to the Plan, against any claim, cost, expense (including reasonable attorneys' fees), judgment or liability (including any sum paid in settlement of a claim with the approval of the Company) arising out of any act or omission to act of the Claims Administrator or Appeals Committee under this Plan, except in the case of willful misconduct. The Employers shall be jointly and severally liable for any amounts owed pursuant to this Section.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

**9.3** **Spendthrift Provision.** Except as expressly provided for in this Plan, no right or interest of any Participant or Beneficiary under this Plan may be assigned, transferred or alienated, in whole or in part, either directly or by operation of law, and no such right or interest shall be liable for or subject to any debt, obligation or liability of such Participant or Beneficiary.

**9.4** **Employment Noncontractual.** The establishment of this Plan shall not enlarge or otherwise affect an Employee's "at will" employment by an Employer, and an Employer may terminate the employment of any Employee at any time and/or modify the Employee's working relationship as desired, at-will for any or no reason (with or without cause), as freely and with the same effect as if this Plan had not been established.

**9.5** **Discharge for Benefit Payments.** If the Claims Administrator determines that a Participant is unable to apply a benefit payment under this Plan in furtherance of his or her own interest and advantage, the Claims Administrator may direct all or any portion of such payment to be made (i) to the guardian of the person, managing conservator or guardian of the estate of the Participant, (ii) to a relative or friend of the Participant, to be expended for the Participant's benefit, (iii) to a custodian for the Participant under any Uniform Gifts to Minors Act, or (iv) to a trust established for the Participant. The Claims Administrator shall not be obligated to see to the proper application or expenditure of any payment so made. Any payment made pursuant to the power herein conferred upon the Claims Administrator or Appeals Committee shall operate as a complete discharge of all obligations of the Plan and the Claims Administrator and Appeals Committee, to the extent of the payments so made.

**9.6** **Participation By Affiliates.** With the consent of the Company, any incorporated or unincorporated trade or business which is a member of a control group (within the meaning of Section 3(40) of ERISA) with respect to which the Company is also a member may adopt and become an Employer under this Plan.

**9.7** **Plan Documents Control.** This written Plan document constitutes the entire Plan, and no oral or written representation or promise concerning the Plan which is inconsistent with the provisions of this Plan document shall have any effect. The provisions of this Plan document shall be the sole source of all legally enforceable rights with respect to the benefits herein provided.

**9.8** **Construction.** The titles to the Articles and the headings of the Sections in this Plan are placed herein for convenience of reference only and in case of any conflict the text of this instrument, rather than such titles or headings, shall control. Whenever a noun or pronoun is used in this Plan in plural form and there be only one person or entity within the scope of the word so used, or in singular form and there be more than one person or entity within the scope of the word so used, such word or pronoun shall have a plural or singular meaning as appropriate under the circumstance.

**9.9** **Separability.** If for any reason any provision of this Plan is determined to be invalid or contrary to applicable law, such invalidity shall not impair the operation of or otherwise affect the remaining provisions of this Plan.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

**9.10    Applicable Law.** This Plan shall be governed and construed in accordance with the provisions of ERISA and, except where superseded by federal law, the laws of the State of Texas.

**9.11    Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA").** Notwithstanding anything in the Plan to the contrary, and solely to the extent applicable, this Plan shall be operated in accordance with the requirements of HIPAA and regulations issued thereunder, the provisions of which are hereby incorporated by reference, and the Plan Administrator has full power and discretion to cause the Plan to be so operated, including without limitation, the power to interpret, construe and implement all applicable provisions of HIPAA in such manner as the Plan Administrator deems appropriate.

**9.12    Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA").** Notwithstanding anything in the Plan to the contrary, and solely to the extent applicable, this Plan shall be operated in accordance with the requirements of COBRA and regulations issued thereunder, the provisions of which are hereby incorporated by reference, and the Plan Administrator has full power and discretion to cause the Plan to be so operated, including without limitation, the power to interpret, construe and implement all applicable provisions of COBRA in such manner as the Plan Administrator deems appropriate.

**9.13    Uniform Services Employment and Reemployment Rights Act ("USERRA").** Notwithstanding anything in the Plan to the contrary, and solely to the extent applicable, this Plan shall be operated in accordance with the requirements of USERRA and regulations issued thereunder, the provisions of which are hereby incorporated by reference, and the Plan Administrator has full power and discretion to cause the Plan to be so operated, including without limitation, the power to interpret, construe and implement all applicable provisions of USERRA in such manner as the Plan Administrator deems appropriate. In this regard, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with USERRA as it applies to this Plan.

**IN WITNESS WHEREOF,** this Plan has been executed by the Company this _____ day of _____, 2005, to be effective as of August 1, 2005.

**AUTOZONERS, LLC**

By_____
William C. Rhodes

By_____
Harry Goldsmith

By_____
Michael Archbold

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

© Copyright 2005 PartnerSource, Inc.
Rev. 6/30/05

page 60