UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS SAN ANGELO DIVISION

| | | |
|---|---|---|
| TORIBIO MUNGUIA and | § | |
| KATHY MUNGUIA | § | |
| | § | |
| v. | § | Civil Action No. 6:09 CV-00023-C |
| | § | |
| | § | |
| | § | |
| AUTOZONE TEXAS, L.P. | § | |
| AUTOZONE, INC., and | § | |
| AUTOZONERS, LLC | § | |

# APPENDIX TO MOTION TO COMPEL ARBITRATION

## PART 4
## PAGES 61-78

page 61

# APPENDIX A

# PARTICIPATING AFFILIATES

In addition to AutoZoners, LLC, the following affiliates have adopted the Plan pursuant to Section 9.6 and shall be considered "Employers" for purposes of the Plan:

1. **AZer TEXAS, LLC**
   Federal Tax ID Number 35-2211635

2. **AUTOZONE WEST, INC.**
   Federal Tax ID Number 13-3440178

© Copyright 2005 PartnerSource, Inc.
Rev. 6/21/05

# APPENDIX B

## USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION

Effective August 1, 2005, the Plan shall comply with this Appendix B with respect to Medical Benefits provided under this Plan. Appendix B has been written in accordance with the "Standards for Privacy of Individually Identifiable Health Information" ("HIPAA Privacy Rules"), as specified under 45 CFR Part 160 and Part 164, Subparts A and E. Unless otherwise indicated below, the terms used in this Appendix shall have the same meanings as defined in the Plan.

**1.1 Employer Uses and Disclosures of PHI.** The Employer shall use and disclose PHI provided by the Plan only to the extent such use and disclosure is:

(a) for Treatment, Payment or Health Care Operations, as permitted by and in compliance section 164.506 of the HIPAA Privacy Rules; or

(b) as otherwise permitted or required for group health plans under section 164.502 of the HIPAA Privacy Rules.

**1.2 Certification.** The Plan shall not disclose PHI to the Employer unless the Employer provides the Plan with certification that the Employer agrees to comply with the following provisions. The Plan shall also limit the disclosure of PHI to the Employer for plan administration functions that the Employer performs only consistent with such provisions.

(a) The Employer shall not use or further disclose PHI other than as permitted or required by the plan documents for the Plan or as required by law;

(b) The Employer shall require any agents, including a subcontractor, to whom it provides PHI from the Plan to agree to the same restrictions and conditions that apply to the Employer with respect to PHI;

(c) The Employer shall not use or disclose PHI from the Plan for employment-related actions and decisions or in connection with any other employee benefit plan of the Employer;

(d) The Employer shall report to the Plan any use or disclosure of PHI provided by the Plan that is inconsistent with the purpose for which the PHI was provided, once the Employer becomes aware of such inconsistent use or disclosure;

(e) The Employer shall provide affected individuals with access to their PHI in accordance with section 164.524 of the HIPAA Privacy Rules;

(f) The Employer shall make PHI available for amendment by the affected individual and shall incorporate any amendments made into such PHI;

(g) The Employer shall make available to affected individuals information required in order to provide an accounting of any disclosures made by the Plan, but only to extent that such disclosures must be accounted for under section 164.528 of the HIPAA Privacy Rules;

(h) The Employer shall make its internal practices, books, and records relating to the use and disclosure of PHI from the Plan available to HHS for determining Plan compliance with HIPAA Privacy Rules;

(i) If feasible, the Employer shall return or destroy all PHI received from the Plan that the Employer still maintains in any form and shall retain no copies of such PHI when no longer needed for the purpose for which disclosure was made. Notwithstanding the foregoing, if such return or destruction is not feasible, the Employer shall limit further uses and disclosures of such PHI to those purposes that make return or destruction of the PHI infeasible; and

(j) The Employer shall ensure that adequate separation has been established between the Employer and the Plan.

**1.3 Separation Between Employer and Plan.** The Plan's designated Claims Administrator, the Plan's designated Appeals Committee members and their respective representatives whom they designate to perform Plan functions shall be the only Employees or other persons under the direct control of the Employer that shall be given access to PHI for use and disclosure.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/21/05

(a) Subject to Section 1.4 below, access to and use of PHI by the above-referenced persons shall be restricted to the Plan Administrator functions that the Employer performs for the Plan.

(b) In the event that any of the above-referenced persons fails to comply with the requirements of the HIPAA Privacy Rules and this Appendix, an affected individual may bring a claim to resolve the noncompliance by contacting the Plan's HIPAA privacy contact person specified on the individual's authorization or in the Plan's Notice of Privacy Practices.

(1) The Plan shall respond to such claim within 30 days, subject to a 30-day extension. If the Plan disagrees with the complaint or the claim is otherwise denied in whole or in part, the Plan shall provide the affected individual with a written denial that explains the basis for the denial. The affected individual may then provide the Plan with a written statement of disagreement and/or take such further action provided in the Plan's Notice of Privacy Practices or by law.

(2) The Employer shall ensure that this process provides appropriate sanctions for noncompliance and otherwise serves as an appropriate mechanism for noncompliance disputes.

**1.4 Exceptions to Employer Uses and Disclosures.** Notwithstanding the foregoing, the Plan may disclose the following information to the Employer:

(a) PHI to the extent specified in an authorization that complies with section 164.508 of the HIPAA Privacy Rules;

(b) Summary Health Information, if the Employer requests Summary Health Information for the limited purpose of either (1) obtaining premium bids for insurance coverage related to the Plan, or (2) modifying, amending or terminating the Plan; or

(c) information on whether an affected individual is participating in the Plan.

**1.5 Definitions.** The following definitions shall apply to this Appendix:

(a) **"Health Care Operations"** shall mean any of the following activities that relate to functions covered under the HIPAA Privacy Rules:

(1) conducting quality assessment and improvement activities, including outcome evaluation and development of clinical guidelines, population-based activities relating to improving health or reducing health care costs, protocol development, case management and care coordination, contacting health care providers and patients about Treatment alternatives, and related functions that do not include Treatment;

(2) reviewing the competence or qualifications of health care professionals, evaluating provider performance, health plan performance, conducting training programs related to improving health care provider skills, accreditation, certification, licensing or credentialing activities;

(3) underwriting, premium rating and other activities related to creation, renewal or replacement of health insurance or Medical Benefits (including excess loss insurance);

(4) conducting or arranging for medical review, legal services and auditing functions, including fraud and abuse detection and compliance programs;

(5) business planning and development, such as conducting cost-management analyses for managing and operating the Plan;

(6) business management and general administrative activities of the Plan, including (A) compliance with the HIPAA Privacy Rules, (B) customer service, (C) resolution of internal grievances, or (D) the sale, transfer, merger or consolidation of all or part of a Plan with another entity that is (or will be) covered by the HIPAA Privacy Rules (including due diligence related to such activity); and

(7) creating de-identified health information or a limited data set.

(b) **"Payment"** means Plan activities to determine (or fulfill its responsibility for) coverage and provision of benefits under the Plan, or obtain or provide reimbursement for the provision of health care. These activities must relate to the

© Copyright 2005 PartnerSource, Inc.
Rev. 6/21/05

page 64

individual receiving health care, including, but not limited to:

    (1) Eligibility or coverage determinations (including coordination of benefits) and adjudication or subrogation of Medical Benefit claims;

    (2) Risk adjusting amounts due based on enrollee health status and demographic characteristics;

    (3) Billing, claims management, collection activities, obtaining payment under a reinsurance contract and related health care data processing;

    (4) Review of health care services with respect to medical necessity, Plan coverage, appropriateness of care or justification of charges;

    (5) Utilization review activities, including precertification and preauthorization of services, concurrent and retrospective review; and

    (6) Subject to the HIPAA Privacy Rules, disclosure to consumer reporting agencies related to premium or reimbursement collection.

(c) **"Protected Health Information" or "PHI"** means the individually identifiable health information (including demographics) that is transmitted or maintained by electronic or any other form or medium and that:

    (1) is created or received by the Plan or an Employer;

    (2) relates to past, present or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present or future payment for health care for the individual; and

    (3) identifies the individual (or there is a reasonable basis to believe that the information can be used to identify the individual).

As specified under the HIPAA Privacy Rules, PHI excludes individually identifiable health information contained in education records and employment records held by an Employer.

(d) **"Summary Health Information"** means individually identifiable health information:

    (1) that summarizes the claims history, claims expenses, or type of claims experienced by individuals for whom the Employer has provided Medical Benefits under the Plan; and

    (2) from which the certain information that identifies the individual (as described in section 164.514(b)(2)(i) of the HIPAA Privacy Rules) has been deleted, except that geographic information need only be aggregated to the level of a five digit zip code.

(e) **"Treatment"** shall mean the provision, coordination or management of health care and related services by one or more health care providers, including coordination or management of health care by a health care provider with a third party, consultation between health care providers relating to a patient or the referral of a patient for health care from one health care provider to another.

© Copyright 2005 PartnerSource, Inc.
Rev. 6/21/05

 

-AutoZoner should retain 1st copy
-Mail 2nd copy to SSC
-Send 3rd copy to the Regional HR Manager

# AZ TEXAS ADVANTAGE ACKNOWLEDGEMENT FORM

**RECEIPT OF MATERIALS.** By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Summary Plan Description (the "SPD") for the AZTEX Advantage: AutoZone Texas Occupational Injury Benefit Plan, effective August 1, 2005.

**INJURY NOTICE AND MEDICAL PROVIDERS.** I understand and agree that if I am injured on the job, I must notify my Manager On Duty within 24 hours of the time of the injury and receive any medical care from a Plan-approved physician in order to receive benefits under the Plan.

**SAFETY PLEDGE.** I agree to familiarize myself with the safety program for the Company and to perform my job according to the general and departmental safety rules of the Company. I will also use any personal protective equipment that is provided to me. I also agree to immediately report to my manager on duty any accident that involves another AutoZoner, a customer, a vendor, or me. I will also immediately report any unsafe act, condition or equipment. I will also cooperate with any accident investigations, and actively participate in any Company safety training programs.

**ARBITRATION.** I also acknowledge that this SPD includes a mandatory company policy requiring that certain claims or disputes relating to an on-the-job injury (that cannot otherwise be resolved between the Company and me) must be submitted to an arbitrator, rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Company at any time on or after August 1, 2005, I am accepting and agreeing to comply with these arbitration requirements. I understand that the Company is also accepting and agreeing to comply with these arbitration requirements. All covered claims brought by my spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns are also subject to the Company's arbitration policy, and any decision of an arbitrator will be final and binding on such persons and the Company.

| X _[signature]_ | 7-19-07 |
|---|---|
| AutoZoner's Signature | Date |
| _Toribio R Metalguia_ | 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 |
| Print AutoZoner's Name | AutoZoner's Social Security No. |
| Parent or Legal Guardian Signature (if AutoZoner under age 18) | AUTOZONE, INC. STORE #1367 311 East Commerce Street Brownwood, TX 76801 |
| 1367 | |
| AutoZoner's Store Number | |
| X _[signature]_ | 7-19-07 |
| For the Company | Date |

© Copyright 2005 PartnerSource, Inc.
Rev. 8/30/05

page 6/6

## AMENDMENT NO. 1

### TO THE

### AZTEX ADVANTAGE: AUTOZONE TEXAS OCCUPATIONAL INJURY BENEFIT PLAN

Pursuant to Article VIII thereof, the AutoZone Texas Occupational Injury Benefit Plan (the "Plan") is hereby amended in the following respects only:

**Section 1.11(d)(12)** is hereby amended by restatement to read in its entirety as follows:

(12) Mental health services (to the extent not otherwise covered by an Employer's Employee Assistance Program), but only when such services are provided for mental or emotional damage or harm resulting from a Participant being the victim of, or witness to, a violent crime occurring during such Participant's Course and Scope of Employment; and provided, that such services shall not exceed five visits with an Approved Physician or Approved Facility. This coverage shall apply to Medical Benefits coverage and provide for no more than three days payment of Wage Replacement Benefits. Such coverage shall not result in the payment of any other benefits under this Plan;

**IN WITNESS WHEREOF**, this Amendment has been executed this 3rd day of January, 2007, to be effective as of November 1, 2006.

AUTOZONERS, LLC
By: AutoZone Stores, Inc., its Sole Member

By: _____
William C. Rhodes

By: _____
Harry L. Goldsmith

By: _____
William T. Giles

APPROVED AS TO LEGAL FORM
A. Cluman _____ 1/3/07

© Copyright 2004 PartnerSource, Inc.

page 67

# AMENDMENT NO. 2

## TO THE

## AZTEX ADVANTAGE: AUTOZONE TEXAS OCCUPATIONAL INJURY BENEFIT PLAN

Pursuant to Article VIII thereof, the AZTEX Advantage: AutoZone Texas Occupational Injury Benefit Plan (the "Plan") is hereby amended in the following respects only:

Section 1.26(b)(7) is hereby amended by restatement to read in its entirety as follows:

    (7)    hernia, unless such hernia is an inguinal or umbilical hernia that --

        (A)    appeared suddenly and immediately following the Injury;

        (B)    did not exist in any degree prior to the Injury; and

        (C)    was accompanied by pain; or

IN WITNESS WHEREOF, this Amendment has been executed this **3rd** day of **January**, 2007, to be effective as of November 1, 2006.

AUTOZONERS, LLC.
By: AutoZone Stores, Inc., its Sole Member

By: _____
    William C. Rhodes

By: _____
    Harry L. Goldsmith

By: _____
    William T. Giles

APPROVED AS TO LEGAL FORM
A. Chanan

© Copyright 2004 PartnerSource, Inc.

page 68

# AMENDMENT TO THE

# AZTEX ADVANTAGE: AUTOZONE TEXAS OCCUPATIONAL INJURY BENEFIT PLAN

Pursuant to the terms of the official plan document, the AZTEX ADVANTAGE: AUTOZONE TEXAS OCCUPATIONAL INJURY BENEFIT PLAN (the "Plan") is hereby amended in the following respects only:

**Appendix A** of the Plan is hereby amended to add a new Section 1.6 to the end thereof, to read in its entirety as follows:

**1.6 Security of Electronic PHI.** Effective April 20, 2006, the Plan shall comply under this Appendix A with the "Standards for the Protection of Electronic Protected Health Information" ("HIPAA Security Rules"), as specified under 45 CFR Part 164, Subpart C.

    (a)    The Employer shall implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic PHI that is created, received, maintained, or transmitted by the Employer on behalf of the Plan;
    (b)    Subject to Section 1.4 of this Appendix, the Employer shall ensure that adequate separation exists between the Employer and the Plan through the implementation of reasonable and appropriate security measures;
    (c)    The Employer shall ensure that any agent, including a subcontractor, to whom it provides electronic PHI agrees to implement reasonable and appropriate security measures to protect the electronic PHI; and
    (d)    The Employer shall report to the Plan any security incident of which it becomes aware.

**IN WITNESS WHEREOF,** this Amendment has been executed this _____ day of _____, 2006, to be effective as of April 20, 2006.


                                    **AUTOZONERS, LLC**

                                    By:_____
                                         (Signature and Title)

© Copyright 2006 PartnerSource, Inc.

page 69

# AMENDMENT NO. 3

## TO THE

## AZTEX ADVANTAGE: AUTOZONE TEXAS OCCUPATIONAL INJURY BENEFIT PLAN

Pursuant to Article VIII thereof, the Aztex Advantage: AutoZone Texas Occupational Injury Benefit Plan (the "Plan") is hereby amended in the following respects only:

**FIRST:** Section 1.13 of the Plan is hereby amended by restatement to read in its entirety as follows:

> **1.13 "Cumulative Trauma"** means damage to the physical structure of the Participant's body as a direct result of rapid, repetitious, physically traumatic activities that occur in the Course and Scope of Employment. The term "Cumulative Trauma" does not mean fatigue, soreness, strains or general aches and pain that may have been caused, aggravated, exacerbated or accelerated by the Participant's Course and Scope of Employment.
>
> (a) Any provision of this Plan to the contrary notwithstanding, if an Employer has purchased an insurance policy described in Section 5.2, the purpose of which (in whole or in part) is to pay Plan benefits to Participants or indemnify the Employer for Plan benefits, then the Participant's last day of last exposure to the condition causing or aggravating such Cumulative Trauma must have taken place during the policy period.
>
> (b) Any provision of this Plan to the contrary notwithstanding, no benefits will be payable with respect to Cumulative Trauma unless the Participant has completed at least 180 days of continuous, active employment with an Employer and has been regularly engaged in a Course and Scope of Employment with the Employer involving rapid, repetitious, physically traumatic activities.

**SECOND:** Section 1.26(c) of the Plan is hereby amended to add the following subsection to the end thereof:

> (18) the injury was caused by an ordinary function of life, including but not limited to standing, sitting, or walking.

**THIRD:** Section 1.40 of the Plan is hereby amended by restatement to read in its entirety as follows:

> **1.40 "Preexisting Condition"** means any Participant illness, injury, disease, or other physical or mental condition, whether or not work-related, for which medical advice, diagnosis, care or treatment was recommended or received within the 3-month period ending on the date that the Employee became a Participant in the Plan.

© Copyright 2008 PartnerSource, Inc.

1

page 70

**FOURTH:** Section 2.3 of the Plan is hereby amended by restatement to read in its entirety as follows:

> 2.3 **Resolution of Certain Injury-Related Disputes.** The Employer hereby adopts a mandatory policy requiring that the following claims or disputes must be submitted to mediation and, if necessary, final and binding arbitration under this Section 2.3: (A) any legal or equitable claim or dispute relating to enforcement or interpretation of the arbitration provisions in an AZTEX Advantage Acknowledgement Form or this Section 2.3; and (B) any legal or equitable claim by or with respect to a Participant for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; claims for assault, battery, negligent hiring/training/supervision/retention, emotional distress, retaliatory discharge, or violation of any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation or ordinance was enacted before or after the effective date of this Section 2.3). This includes all claims listed above that a Participant has now or in the future against an Employer, its officers, directors, owners, employees, representatives, agents, subsidiaries, affiliates, successors, or assigns. This does not, however, include any legal or equitable claim under ERISA for benefits, fiduciary breach, or other problem or relief solely relating to benefits payable under this Plan. The determination of whether a claim is covered by this Section shall also be subject to mediation and arbitration under this Section. Neither a Participant nor an Employer shall be entitled to a bench or jury trial on any claim covered by this Section. This Section applies to all Participants without regard to whether they have completed and signed an AZTEX Advantage Acknowledgement Form. These provisions also apply to any claims that may be brought by a Participant's spouse, children, parents, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns. The dispute resolution provisions of this Plan will be the sole and exclusive remedy for resolving any such claim or dispute.
>
> > (a) **Mediation Prior to Arbitration:** A party must first seek resolution of a claim or dispute through mediation prior to a request for arbitration.
> >
> > (b) **Required Notice of All Claims:**
> >
> > > (1) **Mediation.** The party requesting mediation shall send written notice to AutoZone, Inc., in care of the Litigation Manager, P.O. Box 2198 Memphis, TN 38101-9842. If the Employer wishes to seek mediation, the Employer must also give written notice to the Participant at the last address recorded in his or her personnel file.
> > >
> > > (2) **Arbitration.**
> > >
> > > > (A) When a party seeks arbitration, such party must give written notice of any claim to the other party within the applicable statute of limitations. The day the act complained of occurred will be counted for purposes of determining the applicable period. If such notice is not given, the claim shall be void and deemed waived. The party requesting arbitration must

© Copyright 2008 PartnerSource, Inc.

2

page 71

send written notice in triplicate to the American Arbitration Association, Attention: Regional Claims Administrator, at 13455 Noel Road, Two Galleria Tower, Suite 1750, Dallas, Texas, 75240-6620. If a Participant wishes to invoke arbitration, the Participant must also send written notice to the Litigation Manager, P.O. Box 2198 Memphis, TN 38101-9842, (or such other person or address as the Employer may specify). If the Employer wishes to invoke arbitration, the Employer must also give written notice to the Participant at the last address recorded in the Participant's personnel file. The party requesting arbitration must identify and describe the nature of all claims asserted and the facts on which the claims are based. This written notice shall be sent certified or registered mail, return receipt requested.

(c)  **Procedures:**

(1)  **Mediation Procedures:** Mediation under this Section shall be handled by a mediator appointed by the American Arbitration Association ("AAA") who is skilled in handling conflicts. The goal of mediation is to develop a solution that satisfies both parties in a way that strengthens the working relationship. The mediator will listen to both sides and will offer creative solutions to the problem. If the parties cannot agree to a solution through a mediator, either party may request arbitration.

(2)  **Arbitration Procedures:** Any arbitration under this Section will be administered by the American Arbitration Association ("AAA") under its then-current Employment Arbitration Rules and Mediation Procedures. Unless otherwise agreed to in writing by the parties, the arbitrator selected by the parties in accordance with those rules (1) shall be an attorney licensed to practice in the State of Texas with experience in personal injury litigation, and (2) shall be selected from a panel of arbitrators located in Dallas County, Texas. If the arbitrator so selected becomes unable to serve for any reason, the parties shall again go through the same selection process. The arbitrator will apply the substantive law (and the laws of remedies) of Texas (other than the Texas General Arbitration Act), or federal law, or both, depending upon the claims asserted. The arbitrator will provide brief findings of fact and conclusions of law. The final decision and the arbitration award, if any, shall be made consistent with remedies available under Texas statute and case law. All decisions rendered by an arbitrator under this Section will be kept confidential by all parties, and shall not serve as binding, legal precedent with respect to subsequent claims or disputes under this Section.

(d)  **Payment of Fees and Expenses:**

(1)  **Mediation:** The AAA filing fee for mediation will be at least $325. The Employee's share of this cost is $50. The Employer will then pay the remainder of the AAA filing fee. The Employer will also pay all of the mediator's fee and any other AAA administrative expenses.

© Copyright 2008 PartnerSource, Inc.

page 72

(2) **Arbitration:** The Employee shall pay a nonrefundable arbitration filing fee equal to the standard employee filing fee specified under then-current AAA Employment Arbitration Rules and Mediation Procedures. The Employee's filing fee must be paid when he or she submits a request for arbitration (or, if this process is challenged by an Employee, when arbitration is compelled by court order). The Employer shall pay a nonrefundable arbitration filing fee equal to the standard employer filing fee specified under then-current AAA Employment Arbitration Rules and Mediation Procedures. The Employer will also pay the arbitrator's entire fee and any other AAA administrative expenses; provided, however, that an employee may elect to also pay up to one-half of these fees and expenses.

(A) If the arbitrator finds completely in favor of the Employee on all claims, the Employer will reimburse the Employee for his or her share of the filing fee.

(B) If the Employer initiates the arbitration (by means other than a motion in court to compel arbitration), the Employee will pay no portion of the AAA or arbitrator fees.

(C) Either party may arrange for and pay the cost of a court reporter to provide a stenographic record of the proceedings.

(D) Each party shall also be responsible for their own attorney's fees, if any. However, if any party prevails on a statutory claim which allows the prevailing party to be awarded attorney's fees, or if there is a written agreement providing for such fees, the arbitrator may award reasonable attorney's fees to the prevailing party.

(E) Notwithstanding, the above provisions, the arbitrator shall assess the AAA filing fee, arbitrator fees and expenses, and attorney's fees against a party upon a showing by the other party that the first party's claim is frivolous, or unreasonable, or factually or legally groundless.

(F) If either party pursues a claim covered by this Section by any means other than arbitration, the responding party shall be entitled to dismissal of such action, and the recovery of all costs and attorney's fees and expenses related to such action.

(3) If either party pursues a claim covered by this Section by any means other than the dispute resolution provisions of this Plan, the responding party shall be entitled to dismissal of such action.

(e) **Interstate Commerce and Venue:** The Employer is engaged in transactions involving interstate commerce (for example, purchasing goods and services from outside Texas which are shipped to Texas and providing goods and services to customers from other states) and the Participant's employment involves such commerce. The Federal Arbitration Act shall govern the interpretation,

© Copyright 2008 PartnerSource, Inc.

4

enforcement, and proceedings under the arbitration provisions of this Plan. Unless contrary to applicable law, any lawsuits seeking to enforce or vacate an arbitration award shall be brought in the United States District Court for the Northern District of Texas, Dallas Division.

(f) **Binding Effect of Arbitration:** This provision for resolving claims by arbitration is equally binding upon, and applies to any such claims that may be brought by, an Employer and each Participant and his/her spouse, children, parents, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns. This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute. This Section applies to all Participants without regard to whether they have completed and signed an AZTEX Advantage Acknowledgement Form. Adequate consideration for this arbitration provision is represented by, among other things, eligibility for (and not necessarily any receipt of) benefits under this Plan and the fact that it is mutually binding on both the Employers and Participants. Any actual payment of benefits under this Plan to or with respect to a Participant shall serve as further consideration for and represent the further agreement of such Participant to the provisions of this Section. This arbitration provision shall remain in effect with respect to the Employers and all Participants, without regard to any Participant refusal of benefits under this Plan, return of benefit payments under this Plan to an Employer, ineligibility for or cessation of benefits under this Plan in accordance with its terms, or any voluntary or involuntary termination of a Participant's employment with an Employer. This arbitration provision is not subject to ERISA requirements or otherwise dependent upon the benefit provisions of this Plan in any way, and is included herein strictly as a matter of convenience in documentation. This Plan and arbitration requirement also in no way changes the "at will" employment status of any Participant not covered by a collective bargaining agreement.

**FIFTH:** Section 6.2(h) of the Plan is hereby amended by restatement to read in its entirety as follows:

(h) **Exhaustion of Administrative Remedies:** No legal action can be brought by or with respect to a Participant to recover benefits under the Plan before the foregoing claims procedure has been exhausted. For all ERISA claims or actions (including claims for violations of ERISA-protected rights), the claim or action must be brought within two years of the date when the claimant knows or should know of the actions or events that gave rise to such claimant's claim. Unless contrary to applicable law, any ERISA right of action or other legal action challenging a Plan decision shall be brought in the United States District Court for the Northern District of Texas, Dallas Division.

© Copyright 2008 PartnerSource, Inc.

**SIXTH:** Sections 7.3, 7.4 and 7.5 of the Plan are hereby amended by restatement to read in their entirety as follows:

> **7.3 Subrogation and Reimbursement Rights.** For purposes of Section 7.3, 7.4, and 7.5 of this Plan, the term "Payee" means a Participant or Beneficiary or their family members, heirs, estate, or other representative (in their individual or representative capacity), singularly or collectively as the context may require to give the Plan the broadest possible rights of recovery.
>
> (a) **Right of Subrogation:** If a Payee becomes entitled to or directly or indirectly receives Plan benefits for any Injury caused by the negligence or other act or omission of any person or organization (including, but not limited to, an Employer), and is (or later becomes) entitled to or otherwise collects any damages or other compensation in connection with such Injury (including, but not limited to, damages for negligence, survival, wrongful death or other legal or equitable action), whether by insurance, litigation, settlement or other proceeding, the Payee shall automatically be required to (i) subrogate his, her or its right to and reimburse the Plan out of said damages or other compensation to the extent of the Plan benefits paid to, or with respect to, the Payee and (ii) subrogate his, her or its right to and reimburse the Plan out of said damages or other compensation for all medical management, investigation, attorneys' fees, costs of recovery, and other expenses related to the claim for benefits (including any subrogation proceeding). The subrogation rights of this Plan even apply with respect to a Payee who is (or later becomes) entitled to or otherwise collects any damages or other compensation in connection with such Injury but has not and will not receive any Plan benefits if such person's claim for damages or other compensation is dependent on whether the Participant had or has a valid claim against a third party.
>
> (b) **Written Confirmation:** Upon request of the Plan, the Payee shall provide the Plan written confirmation of this subrogation right, including execution of any assignment, lien form or other document requested by the Claims Administrator to enable the Plan to recover such Plan benefits and related expenses. Any failure of a Payee to give written confirmation of the Plan's subrogation rights does not adversely affect its rights of subrogation because the Plan's right of subrogation arises automatically once payment under this Plan is made to or on behalf of the Payee.
>
> (c) **Right to Reimburse:** If (i) a Payee fails, refuses or neglects to reimburse the Plan or otherwise comply with the provisions of this Section, or (ii) payments are made under the Plan based on fraudulent information or otherwise in excess of the amount necessary to satisfy the provisions of the Plan, then the Plan shall still have all remedies and rights of recovery specified herein. The Plan shall also have the right to terminate or suspend benefit payments and/or recover the reimbursement of all amounts above due to the Plan by withholding, offsetting and recovering such amounts out of any future Plan benefits or amounts otherwise due from the Plan to or with respect to such Payee.

© Copyright 2008 PartnerSource, Inc.

page 75

(d) **Right of Recovery:** The Plan shall have the first lien recovery against any benefits paid or to be paid by the Plan. The Plan shall also have the right to bring a lawsuit and assert a constructive trust or other interest against any and all persons that have assets that the Plan can claim rights to. The Plan has the right of first recovery from any judgment, settlement or other payment, regardless of whether the Payee has been "made whole."

(e) **Attorney's Fees and Expenses:** The Plan's subrogation rights and first lien will not be reduced by attorneys' fees or expenses incurred by any party in pursuing recovery against a third party and the "common fund" doctrine shall not apply. Any attorneys' fees and/or expenses incurred by or at the request of the Payee or his, her or its attorneys in a third party or other action shall be the sole responsibility of such party.

7.4 **Notice Of Legal Proceedings.** A Payee (whether or not such person has received or may in the future directly or indirectly receive Plan benefits) shall provide the Claims Administrator with prior written notice of the involvement of such party in any lawsuit, settlement discussion or other proceeding (for negligence, wrongful death, survival or other cause of action), one of the principal purposes of which is recovering, from any person or organization, damages or other compensation in any way related to any Injury for which Plan benefits have been or may in the future be paid. The Plan shall have the right to intervene for itself and on behalf of a Payee in any such lawsuit, settlement discussion or other proceeding. If a Payee neglects, fails or refuses to seek a recovery from any person or organization for any Injury caused by the negligence or other act or omission of such person or organization, the Plan shall have the right to institute a lawsuit or other proceeding or do any other act that in the opinion of the Claims Administrator may be necessary or desirable to recover the Plan benefits paid (and to be paid in the future), plus all medical management, investigation, attorneys' fees, costs of recovery, and other expenses incurred by the Plan.

7.5 **Assignment Of Rights.** By participating in this Plan, a Participant obligates himself or herself, as well as all other Payees (in both their individual and representative capacities), to the provisions of this Plan, including, without limitation, Sections 7.3, 7.4, and 7.5 hereof. Upon the request of the Claims Administrator, a Payee shall assign to the Plan the right to intervene in or institute any lawsuit, settlement discussion, or other proceeding described in Sections 7.3 and/or 7.4, and to use the name of such party for such purpose. The Plan shall have the right to select legal counsel of its own choice and such counsel shall have complete control over the conduct of any such lawsuit, settlement discussion, or other proceeding without the consent or participation of any such Payee. Whenever the Plan shall intervene in or institute any lawsuit or other proceeding as permitted by the provisions of this Section, the Plan may pursue same to a final determination and the Plan expressly reserves the right to appeal from any adverse judgment or decision. The Payee shall give the Plan all reasonable aid in any such lawsuit, settlement discussion, or other proceeding in effecting settlement, in securing evidence, in obtaining witnesses, or as may otherwise be requested by the Claims Administrator. The Payee shall release the Plan, the Employers, the Plan Administrator, the Claims Administrator, the Appeals Committee, and their respective directors, officers, agents, consultants, attorneys, and employees from all claims, causes of action, damages and liabilities of whatever kind or character that may directly or indirectly arise out of the

© Copyright 2008 PartnerSource, Inc.

page 76

pursuit or handling by the Plan of any such lawsuit, settlement discussion or other proceeding.

**IN WITNESS WHEREOF,** this Amendment has been executed this \_\_\_\_ day of _____, 2008, to be effective as of April 1, 2008.

          **AUTOZONERS, LLC**
          By:  **AutoZone Stores, Inc., its Sole Member**

          By:_____
                William C. Rhodes

          By: _____
                Harry L. Goldsmith

          By: _____
                William T. Giles

© Copyright 2008 PartnerSource, Inc.

- AutoZoner should retain 1st copy
- Mail 2nd copy to SSC
- Send 3rd copy to the Regional HR Manager

## AZ TEXAS ADVANTAGE ACKNOWLEDGEMENT FORM

**RECEIPT OF MATERIALS.** By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Summary Plan Description (the "SPD") for the AZTEX Advantage: AutoZone Texas Occupational Injury Benefit Plan, effective August 1, 2005.

**INJURY NOTICE AND MEDICAL PROVIDERS.** I understand and agree that if I am injured on the job, I must notify my Manager On Duty within 24 hours of the time of the injury and receive any medical care from a Plan-approved physician in order to receive benefits under the Plan.

**SAFETY PLEDGE.** I agree to familiarize myself with the safety program for the Company and to perform my job according to the general and departmental safety rules of the Company. I will also use any personal protective equipment that is provided to me. I also agree to immediately report to my manager on duty any accident that involves another AutoZoner, a customer, a vendor, or me. I will also immediately report any unsafe act, condition or equipment. I will also cooperate with any accident investigations, and actively participate in any Company safety training programs.

**ARBITRATION.** I also acknowledge that this SPD includes a mandatory company policy requiring that certain claims or disputes relating to an on-the-job injury (that cannot otherwise be resolved between the Company and me) must be submitted to an arbitrator, rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Company at any time on or after August 1, 2005, I am accepting and agreeing to comply with these arbitration requirements. I understand that the Company is also accepting and agreeing to comply with these arbitration requirements. All covered claims brought by my spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns are also subject to the Company's arbitration policy, and any decision of an arbitrator will be final and binding on such persons and the Company.

X _Loulis R. Munyusi_
AutoZoner's Signature

Date: 7-19-07

_Toulio R. Munguia_
Print AutoZoner's Name

AutoZoner's Social Security No.: 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

Parent or Legal Guardian Signature
(if AutoZoner under age 18)

AutoZoner's Store Number: 1367

AUTOZONE, INC.
STORE #1367
311 East Commerce Street
Brownwood, TX 76801

X _signature_
For the Company

Date: 7-19-07

© Copyright 2005 PartnerSource, Inc.
Rev. 8/30/05

page 78